EDWIN W. POE, STUART S. JANNEY AND ERNEST
J. CLARK, RECEIVERS OF THE UNITED SURETY
COMPANY, *vs.* PHILADELPHIA CASU-
ALTY COMPANY, A CORPORATION.

*Subrogation: definition; limitation of rights. Casualty com-*
*panies: indemnifying against loss by accident, etc.;*
*provisions of; no suit until after loss paid. Surety*
*companies: guaranteeing payments*
*of judgments.*

A bond of indemnity of a Casualty Company protected a Con-
struction Company against loss by reason of accidents to
any of its employees during the course of its work; such an
accident occurred and resulted in the death of a workman;
the bond provided that no action would lie under it except
for loss actually sustained and paid, etc.; in order to relieve
its funds, which had been attached by way of non-resident
attachment, to compel the payment of any judgment which
might be obtained in the damage suit, the Construction Com-
pany had given to the testatrix of the victim of the accident
a Surety Company's bond conditioned upon the Construction
Company's paying on demand any judgment that might be
recovered in the suit against it; such a judgment was recov-
ered against the Construction Company, but it had become
insolvent and never paid the same; receivers of the Surety
Company, which had gone into liquidation, paid the judg-
ment and had the same entered to their use; they filed a
bill to be subrogated to the rights of the Construction Com-
pany against the Casualty Company; *held,* that the receivers
of the Surety Company acquired no rights against the Cas-
ualty Company by the payment, or an assignment of that
judgment, which were not previously assured to the Con-
struction Company by the terms of their policy.      p. 352

The only element of substitution in subrogation is that of one person in the place of another; the person so substituted can exercise no right not possessed by his predecessor, nor under any other conditions or limitations.          p. 353

An obligation to pay is not the same as payment.          p. 356

*Decided June 12th, 1912.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-BRIDGE, JJ.

*Stuart S. Janney* (with whom were *George R. Gaither, Ritchie & Janney* and *T. Rowland Slingluff* on the brief), for the appellants.

*Benjamin A. Stansbury* and *Washington Bowie, Jr.,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City dismissing the bill filed by Edwin W. Poe, Stuart S. Janney and Ernest J. Clark, receivers of the United Surety Company, against the Philadelphia Casualty Company. The bill alleges that the United Surety Company was a corporation under the laws of the State of Maryland engaged in the business of selling surety and casualty bonds in the State of Maryland and elsewhere as authorized by its charter.

2. That the Gore-Meenan Company was a corporation under the laws of the State of New York, engaged in a general contracting business in the States of New York, Connecticut and elsewhere as authorized by its charter.

3. That while so engaged, on April 19th, 1909, said Gore-Meenan Company entered into a contract with the New Haven Water Company, a corporation of the State of Connecticut, to construct for it a tunnel for a consideration named in said contract.

4. That on August 2nd, 1909, said Gore-Meenan Company for the purpose of protecting itself against loss by reason of any accident occurring on said work to any of its employees, entered into an agreement with the Philadelphia Casualty Company, a corporation of the State of Pennsylvania, authorized to issue casualty bonds in the State of Connecticut and elsewhere, whereby said Casualty Company, for the consideration named in said contract, did insure said Gore-Meenan Company against any such loss occurring between August 6th, 1909, and May 6th, 1910, by reason of any such accident, not exceeding $5,000 for the death of each person, and delivered to said Gore-Meenan Company its policy of insurance accordingly.

5. That on or about September 28th, 1909, an accident did occur in the progress of said work, resulting in the death of George W. Worden, one of the employees of said Gore-Meenan Company.

6. That suit was brought in the Superior Court of New Haven county, by a duly appointed administratrix of George W. Worden, against the said Gore-Meenan Company, by way of non-resident attachment, on the ground of negligence of said Gore-Meenan Company causing the death of said Worden, and assets of said Gore-Meenan Company in the hands of the New Haven Water Company, to the extent of $6,000, were attached for the payment of any judgment that might be recovered in said suit against said Gore-Meenan Company; and that the Philadelphia Casualty Company was immediately advised by the Gore-Meenan Company of said accident, and that it defended said suit in the name of the Gore-Meenan Company.

7. That on October 19th, 1909, the United Surety Company, at the request of the said Gore-Meenan Company,

issued to the plaintiff in said suit, the administratrix of said Worden, its bond or writing obligatory to relieve said attachment, whereby it bound itself that the said Gore-Meenan Company would, on demand, pay to said plaintiff the amount of any judgment recovered by it in said suit, not exceeding $6,000 with interest.

8. That the trial of said suit resulted in a verdict for said plaintiff against the Gore-Meenan Company in said Superior Court of New Haven county for $4,500, with interest from March 2, 1910, and costs of suit, and that on appeal said judgment was affirmed by the Court of Appeals of Connecticut, whereby said judgment became final and conclusive.

9. That subsequent to the rendition of said judgment, but before the affirmance by the Court of Appeals, the said Gore-Meenan Company became and still was hopelessly insolvent and unable to pay any of its indebtedness whatever.

10. That subsequent to the affirmance of said judgment, the plaintiff therein made demand upon the United Surety Company for the payment of said judgment according to the tenor of said bond of said United Surety Company to relieve said attachment, and thereafter brought suit on said bond in the Superior Court of New Haven county, and recovered judgment thereon on March 3, 1911, for $4,861.46 and costs.

11. That on January 13th, 1911, in a proceeding then pending in the Circuit Court of Baltimore City, entitled *Thomas H. Bowles et al.* vs. *United Surety Company,* these complainants were appointed receivers for said United Surety Company and duly qualified as such, and have since, on May 23, 1911, under the authority and direction of said Court, paid said judgment in full, and have caused the same to be entered to their use as receivers aforesaid.

12. That in virtue of such payment they are entitled to be, and are, subrogated to all the rights of the Gore-Meenan Company against the Philadelphia Casualty Company, and are entitled to recover from it the amount of said judgment so paid by them.

The prayer of the bill is (1) that the Court by its decree declare that the United Surety Company, and the complainants as its receivers, are so subrogated to the same extent as if the said Gore-Meenan Company had paid said judgment. (2) That the Court by its decree order the Philadelphia Casualty Company shall pay to the complainants, the amount of said judgment, interest and costs so paid by them, and (3) for such further relief as their case may require.

All necessary exhibits were filed with the bill.

The defendant demurred to the bill alleging thirteen grounds of demurrer, and the Circuit Court sustained the demurrer and dismissed the bill, from which order or decree this appeael is taken.

From this summary of the bill of complaint, it appears that the complainants rest their claim to be subrogated "to all the rights of the Gore-Meenan Company against the Philadelphia Casualty Company under the terms of the policy of liability insurance hereinabove mentioned, to the same extent, as though the said Gore-Meenan Company had paid the amount of said judgment," upon the relation which the United Surety Company assumed in executing to the administratrix of Worden its undertaking that the Gore-Meenan Company would on demand, pay to her the amount of any judgment recovered by her in her action against the Gore-Meenan Company, not exceeding $6,000.

It appears from the record that this undertaking was applied for by the Gore-Meenan Company upon the blank forms of the United Surety Company; that it was accepted by the administratrix of Worden, and was filed in the attachment proceeding, and that the attachment was discharged, and we must assume that it was in pursuance of some Connecticut statute, though the appellee in its brief states that such is not the fact. We do not regard this question, however, as material in any aspect of the case. The Gore-Meenan Company is not a party at all to the instrument. It is the direct and sole obligation of the United Surety

Company to the personal representative of Worden, by whom suit thereon was subsequently brought, the insolvency of the Gore-Meenan Company having intervened. It had no relation to the legal liability of that company for the death of Worden. Its sole purpose was to procure the release of the attached funds. The United Surety Company assumed no liability for any debt as such, such as is assumed in an appeal, or in a supersedeas, but merely to restore the attached funds in event of the establishment of a debt by a judgment, and the failure of the Gore-Meenan Company to pay said judgment on demand. When the receivers of the United Surety Company paid the judgment obtained against it by the administratrix of Worden, they thereby obtained an equitable title to *that judgment,* and it was properly entered to their use, as alleged in the bill of complaint; but the United Surety Company could acquire no rights by the payment and assignment of that judgment, either legal or equitable, as against the Casualty Company, which were not previously assured to the Gore-Meenan Company under the terms of the policy of the Casualty Company.

This is distinctly recognized by the complainants in the first paragraph of their prayer for relief, in which they only ask it "under the terms of the policy of liability insurance hereinabove mentioned," and this is in accord with the fundamental principle of subrogation.

Sheldon in his work on that subject thus defines the doctrine: "It is the substitution of another *person* in the place of the creditor, so that the person in whose favor it is exercised succeeds to the *rights of the creditor* in relation to the debt." The substitute is put in all respects in the place of the party to whose rights he is subrogated.

Bispham, in his *Principles of Equity,* "has amplified the language of this terse definition without enlarging its scope or application. He says, "Subrogation is the equity by which a person, who is secondarily liable for a debt, and has paid the same, is put in the place of the creditor so far as to entitle him to make use of all the securities and remedies *possessed*

*by the creditor* in order to enforce the right of exoneration as against the principal debtor, or of contribution against others who are liable in the same rank with himself."

In 27 *Amer. & Eng. Enc. of Law* 212, the author of that article, says: "The surety is entitled to all the rights of the *person* to whose place he is subrogated, *but to no greater rights;*" and again, on page 206, he says: "The rights acquired by a party entitled to subrogation, cannot be extended beyond the rights of the party under whom subrogation is claimed. Subrogation contemplates some original privilege on the part of him to whose place substitution is claimed, and where no such privilege exists, or where it has been waived by the creditor, there is nothing on which the right can be based. While a surety who pays the debt of his principal is subrogated to the rights of the holder of the claim, he takes such rights subject to all disqualifications and limitations which attached to them in the hands of his predecessor."

It is clear from these accepted definitions that the only element of substitution in subrogation is of one *person* in the place of another, and that the person so substituted can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding on his predecessor.

Here the Gore-Meenan Company is debtor only to the administratrix of Worden, and the United Surety Company is surety only of the Gore-Meenan Company. The only rights which the surety in any case acquires by substitution, are those of the creditor of his principal. It is clear that there is no privity of contract between Worden's administratrix and the Casualty Company. The contract between the former and the United Surety Company is totally distinct from, and unconnected with, that between the Gore-Meenan Company and the Casualty Company. *Consol. Real Estate* v. *Cashow,* 41 Md. 74. In *Bain* v. *Atkins,* 181 Mass. 240, 57 L. R. A. 791, it was sought to have the Court declare insurance against loss through liability for personal injuries,

to be a trust fund for the benefit of the injured person, but the Court held, otherwise, saying: "The only parties to the contract of insurance were Atkins (the employer), and the company. The consideration for the promise came *from* Atkins alone, and the promise was only to him and his legal representatives. Not only was the plaintiff not a party to either the consideration or the contract, but the terms of the contract do not purport to promise an indemnity for the benefit of any other person than Atkins. * * * The policy contains no agreement that the insurance shall inure to the benefit of the person accidentally injured, and no language from which such an intention or understanding can be implied. Atkins was under no obligation to procure insurance for the benefit of the plaintiff, nor did any relation exist between the plaintiff and Atkins which would give the latter the right to procure insurance for the benefit of the plaintiff. The only correct statement of the situation is simply that the insurance was a matter wholly between the company and Atkins in which the plaintiff had no legal or equitable interest, any more than in any other property belonging absolutely to Atkins." It is therefore difficult, if not impossible, to perceive what original privilege existed under the policy in this case on the part of Worden upon which the right of subrogation could be based.

In tracing the history of these policies it will be found the earlier ones were so worded as to insure employers against *liability* incurred to their employees for death or injuries resulting from the employer's negligence, and the Court humanely and rationally held that liability was fixed by the rendition of a final judgment, and that the Casualty Companies were liable on their contract, though the employer had not actually discharged his liability by payment. Such is the tenor of the decisions in *Anoka Lumber Company* v. *Fidelity and Casualty Company*, (Minn.) 30 L. R. A. 689, and *Ross* v. *American Employers Liability Company* (N. J.), 38 Atl. Rep. 22.

This class of decisions resulted in changing the wording of the policies so as to cover only liability which had been paid. Such a policy came before the Court of Errors and Appeals of New Jersey, in *Moses* v. *Travellers Ins.* Co., 49 Atl. 720. There the employer became a bankrupt on the same day that the employees administratrix obtained a judgment against it for some $6,000. She proved her claim in bankruptcy which was allowed as proper, and the Court held that by proving her claim she constituted the trustee in bankruptcy her trustee and agent, and that to the extent of the money value she would receive upon final distribution of the bankrupt estate, the company had actually paid her trustee and agent by the transfer of its property, and that the Insurance Company would be liable for only so much as the employee was entitled to receive out of the bankrupt estate. The sole defense was that the employer had not paid the loss, and the Court said: "The contract of the Insurance Company does not require that the payment should be made in cash, and this payment in property is sufficient compliance with its terms." Here we have an apt illustration of the doctrine and of its limitations.

In *Kennedy* v. *Fid. Co.,* 9 L. R. A. N. S. 478, 100 Minn. 1, the language of the policy in this respect was the same, and it was there held that payment of the judgment by the employer in its own notes, if given and accepted as payment in good faith, constituted payment within the terms of the policy, though it might happen that these notes would not be paid. That decision is based upon the principle first recognized in Maryland in *Glenn* v. *Smith,* 2 G. & J. 493, and followed in numerous later decisions. Thereupon, the insurance companies, always keeping abreast of the decisions of the Courts affecting their interests, and always alive in the value of the maxim *"vigilantibus, non dormientibus, leges subveniunt,"* again changed the wording of their policies so as to limit recovery to *loss* resulting from liability and actually paid by the employer in money.

The policy now before us is one of that character.

It specifically declares that it thereby "agrees to *indemnify* the assured against *loss* resulting from the liability imposed by law upon the assured for damages on account of bodily injuries or death accidentally suffered by any employees of the assured as provided for in the declarations, by reason of the operations as described and conducted at the places named," and among the conditions to which the policy is made expressly subject, is the following in Paragraph G.:

"No action shall lie against the company to recover for any loss arising under this policy unless it shall be brought *by the assured for loss actually sustained and paid by him in money in satisfaction of a final judgment* after trial of the issue, and no such case shall lie to recover under any other agreement of the company herein contained, unless brought by the assured, to recover money expended by him. In any event no such action shall lie unless brought within 90 days after the payment of such loss."

This brings us to the vital question in this case as affected by the line of decisions upon policies worded as this is, and by the emphatic language of the policy itself.

The distinction which is decisive of this case is now firmly established, and is nowhere more clearly stated than in *Amer. Emp. Liability Ins. Co.* v. *Fordyce,* 36 S. W. Rep. 1051, in these words: "The difference between a contract of indemnity, and one to pay a legal liability, is, that upon the former an action cannot be brought and a recovery had, until the liability is discharged; whereas upon the latter, the cause of action is complete when the liability attaches." The germ of this distinction is found in the language of *Sedgwick on Damages,* sec. 315: "An obligation to pay is not the same as payment."

In *Frye* v. *Bath Gas and Electric Co., and the Fidelity and Casualty Co.,* 54 Atl. Rep. (Maine), 395, the policy of the Casualty Company agreed to indemnify the Gas Company against *loss* from liability for damages on account of bodily injuries, fatal or non-fatal, as in the present case, and one of the conditions of the policy was this: "No action

shall lie against the company (the insurer), as respects any
loss under this policy unless it shall be brought by the
assured himself to reimburse himself for loss actually sus-
tained and paid by him in satisfaction of a judgment after
trial of the issue." The bill in that case presented the ques-
tion in the form presented here, and the Court said: "We
are unable to perceive any ground on which the bill can be
sustained. The contract of the insurer was with the Gas
Company to indemnify that company 'against loss'. * * *
The use of the word 'indemnify' shows the object and nature
of the contract. It was to reimburse, or make whole, the
assured against loss on account of such liability. There can
be no reimbursement when there has been no loss. The
contract of insurance contains nothing to show that it was
the object or intention of the contracting parties that the
insurer should guarantee the Gas Company's liability for
negligence to its employees. It was not a contract of insur-
ance against liability, but of indemnity against loss by reason
of liability. * * * It was not obtained by the Gas Company
for the benefit of its employees, but for its own benefit
exclusively, to reimburse it for any sum that the company
might be obliged to pay, and had paid on account of injuries
sustained by any employee through its negligence. Inde-
pendently of the condition in the contract of insurance above
quoted, we should be compelled to construe this contract as
one of indemnity only. But this provision puts an end to
all question or doubt, if any there could be, * * * There can
be no doubt about the meaning of this language, and no
question about the right of the contracting parties to insert
such a provision in their contract for the purpose of making
clear the nature and limit of the liability of the parties, or
either of them."

In a subsequent case, *Cushman* v. *Carbondale Fuel Co.*, 98
N. W. Rep. 509, where an effort was made to evade the
application of the above principles, the Court said: "A
Court of Equity can no more disregard the express pro-
visions of the contract than could a Court of Law, and

neither can make a new contract for the parties which would impose a liability not contracted for. * * * The only obligation of the Guarantee Company was to indemnify the Fuel Company against a loss actually sustained and paid. This covenant is as explicit and certain as language could well make it."

It is not necessary to prolong this opinion by direct reference to other cases to be found in the brief of the appellee. A full collection of leading cases upon this subject may be found in a note in *Stephens* v. *Pa. Casualty* Co. (135 Mich. 189), as reported in 3 *Amer. & Eng. Ann. Cases,* 480.

There seems to be but one discordant decision, *Sanders* v. *Frankfort Marine and Plate Glass Ins. Co.,* 72 N. H. 485, in which it was held that after taking control of the proceedings in a suit against the assured (though bound to do so by the terms of the policy) the Insurance Company could not thereafter be discharged except by payment of the indemnity to the assured or securing his discharge from the claim. This decision was discussed in *Allen* v. *Gilman,* 137 Fed. Rep. 136, in which it was held to be not only against the weight of authority, but unsatisfactory in itself, and we are of that opinion.

> *Decree affirmed, with costs to the appellee above and below.*