## ERIE INSURANCE EXCHANGE, ET AL. *v.* CALVERT FIRE INSURANCE COMPANY

[No. 241, September Term, 1968.]

*Decided May 2, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*James T. Wharton,* with whom were *McCarthy & Wharton* on the brief, for appellants.

*Allan Sosslau,* with whom were *Friedman & Lipshultz* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Erie Insurance Exchange (Erie) and Mrs. Leela Jane Lee appeal from a judgment in the amount of $1,144.00 entered upon a directed verdict against them in the Circuit Court for Montgomery County in favor of the plaintiff-appellee, Calvert Fire Insurance Company (Calvert).

Erie afforded automobile liability insurance for Frederick R. Harbaugh whose automobile was involved in a collision on November 24, 1962, with an automobile owned and operated by Leela Jane Lee, who sustained personal injuries as well as damage to her automobile. Calvert insured the Lee automobile for collision damage in excess of $100.00. The policies of both insurance companies were in effect at the time of the accident.

Calvert received notice of the accident on December 4, 1962. At that time Mrs. Lee was represented by Myer Koonin, Esquire, who was in contact with Calvert's representative, Edward Fishell. Mrs. Lee's automobile was determined to be a "constructive total loss" and on January 18, 1963, Fishell met with Mrs. Lee to make a settlement. The settlement effected was a replacement vehicle purchased for Mrs. Lee from Tom's Chevrolet, and Mrs. Lee signed a loan receipt, and a loss or

damage agreement, which assigned to Calvert "all rights and causes of action the said undersigned [Mrs. Lee] has against any person, persons or Corporation whomsoever for damages to the insured property . . . ." After sale of the damaged automobile and adjustment of loss, the net loss or amount actually paid by Calvert was $1,144.00. According to Fishell, the settlement between Erie and its assured was approved by Mrs. Lee's attorney, Myer Koonin, although the latter denied it.

On January 31, 1963, Daniel Mitchell, Calvert's subrogation supervisor in Baltimore, Maryland, sent a form letter to Erie advising it that the right of Mrs. Lee to recover $1,245.00 from Erie's insured Harbaugh had been assigned by Mrs. Lee to it. No enclosures accompanied this letter. On February 5, 1963, Erie acknowledged Calvert's letter of January 31, 1963, by a letter which provided in pertinent part: "This is to acknowledge receipt of your letter of subrogation to our assured in regard to the above mentioned accident. As soon as we have made settlement with the claimants for Bodily Injury, we will contact you to make final disposition of this claim." The letter was signed by E. J. Reading, an adjuster for Erie. On August 19, 1963, Calvert again wrote Erie as follows: "Please advise as to the status of your file at this time, and your anticipated settlement date. Thank you." A reply dated August 20, 1963, from John K. Axelson, another Erie adjuster, stated: "Dear Mr. Mitchell: We are still negotiating toward settlement of the bodily injury claims and therefore we cannot satisfy your subrogation claim at present. We suggest you place your file on a 60 day diary." As requested in this response, Calvert placed the file on its diary.

Calvert sent another letter to Erie on January 8, 1964, and furnished, for the first time, copies of the loan receipt, estimate of repairs, and sale of salvage report. By letter dated March 5, 1964, from John Axelson, Calvert learned that Erie had settled with Mrs. Lee on November 7, 1963, for a total of $5,-290.00, which amount included both the bodily injury and property damage claims, $1,490.00 being allocated to the property damage claim. The letter further stated that Calvert's original subrogation notice was on numerous occasions mentioned during the settlement negotiations, but that Erie had been advised

by Mrs. Lee that she never accepted collision payment from Calvert. Mr. Mitchell, one of Calvert's subrogation supervisors, testified that Erie never contacted his company prior to Erie's settling directly with Mrs. Lee to see if Calvert had paid the property damage to its assured. Mr. Axelson also testified that prior to settlement with Mrs. Lee he had made no attempt to contact Calvert to advise them of the settlement he was about to make. He further stated that when he settled the personal injury and property damage claims with Mrs. Lee, "We had felt that we probably owed the claim and we'd best settle it."

On April 15, 1966, Calvert filed suit against Erie, Harbaugh and Mrs. Lee. By amended declaration, it alleged that Erie, as liability insurer, for defendant Harbaugh, had promised to pay Calvert the property damage claim in the amount of $1,144.00. Calvert also alleged that Erie had negligently and carelessly interfered with the appellee's contractual right with Mrs. Lee. During a jury trial before Judge Moorman, the lower court directed a verdict against Erie and Mrs. Lee in favor of Calvert on June 17, 1968. Erie and Mrs. Lee have appealed to this Court. Mrs. Lee has not filed any briefs with this Court in compliance with Maryland Rule 830 a, and accordingly we dismiss her appeal. Rule 835 b (6). See *Butler v. Reed-Avery Co.,* 186 Md. 686, 48 A. 2d 436.

On appeal, Erie maintains that the lower court erred: (1) in denying its motion for a directed verdict on the ground that Calvert had failed to show a promise or agreement by Erie to pay Calvert; (2) in denying its motion for a directed verdict on the ground that limitations barred any claim by Calvert; and (3) in granting a directed verdict in favor of Calvert against Erie. This Court concludes that the lower court did not err in its disposition of the case, and judgment entered upon the directed verdict will be affirmed.

Turning to appellant's first and third contentions, Calvert could not maintain a subrogation claim against Erie's insured because the statute of limitations applying to a tort claim had run. Therefore, in order to recover from Erie, Calvert had to establish an independent agreement with Erie, and its breach. Calvert's letter of January 31, 1963, placed Erie on notice of its subrogation interest. Erie responded to this notice in a let-

ter dated February 5, 1963, which provided in part: "As soon as we have made settlement with the claimants for Bodily Injury, we will contact you to make final disposition of this claim." A further letter from Erie to Calvert dated August 20, 1963, stated in pertinent part: "We are still negotiating toward settlement of the bodily injury claims and therefore we cannot satisfy your subrogation claim at present. We suggest you place your file on a 60 day diary." Relying on this correspondence Calvert placed its claim on its diary.

Erie contends that Calvert failed to produce legally sufficient evidence of a contract because there was no promise to pay made by Erie, and that even if there were such a promise, Calvert paid no consideration. We hold that the words contained in the letter from the appellant constituted a promise by Erie to satisfy the appellee's subrogation claim in return for Calvert's not exercising its right to pursue its claim. It is well established in Maryland that forbearance to exercise or pursue a right or claim, or an agreement to forbear, constitutes sufficient consideration to support a promise or agreement. *Bd. of Co. Comm. v. MacPhail,* 214 Md. 192, 133 A. 2d 96: *Kolker v. Gorn,* 202 Md. 322, 96 A. 2d 475.

Erie maintains that even if their letters were evidence of a contract, that the lower court erred in directing a verdict in favor of Calvert because reasonable minds could differ as to whether Erie promised to pay Calvert and whether Erie's payment to Mrs. Lee was a breach of any such promise. Further, Erie urges that reasonable minds could differ as to the meaning of "final disposition of this claim." Under the circumstances of this case we disagree with appellant's argument that these issues should have been presented to a jury. Erie made payment to Calvert's insured after being on notice of its subrogated interest and after promising to dispose of the claim. But for the running of limitations, a result of Erie's request for Calvert to forego immediate collection efforts, Erie's payment to Mrs. Lee would not have barred the assertion of the insurer's right of subrogation. *Cleaveland v. C. & P. Telephone,* 225 Md. 47, 169 A. 2d 446. Erie's argument that the letters were merely promises to consider the claim lacks force in light of its employee's testimony that the settlement with Mrs. Lee included

$1,490.00 property damage and that "We had felt that we probably owed the claim and we'd best settle it." This Court finds that the facts and evidence were such that the lower court could correctly conclude, as it did, that as a matter of law appellee placed appellant on notice of its subrogated claim, appellant promised to pay the claim in return for appellee's forbearance, and that appellant settled the claim with appellee's insured without the appellee's knowledge or consent.

Appellant's contention that Calvert's claim was barred by the statute of limitations is also without merit. As a general rule, the statute begins to run from the date of the alleged wrong. *Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825; *Killen v. Geo. Wash. Cemetery,* 231 Md. 337, 190 A. 2d 247; *Brack v. Evans,* 230 Md. 548, 187 A. 2d 880. In this case, the date of the alleged wrong was November 7, 1963, the date that Erie settled with Calvert's insured, Mrs. Lee. Calvert filed its suit against Erie on April 15, 1966, well within the three year statute of limitations period.

In accordance with the views above expressed, the judgment of the lower court will be affirmed.

> *Appeal of appellant Lee dismissed.*
> *Judgment affirmed. Costs to be*
> *paid by appellant Erie.*