589 A.2d 464

GOVERNMENT EMPLOYEES INSURANCE COMPANY

v.

GROUP HOSPITALIZATION MEDICAL SERVICES, INC.

Misc. No. 11, Sept. Term, 1990.

Court of Appeals of Maryland.

May 6, 1991.

Wade J. Gallagher (Martell, Donnelly, Gallagher, and Kastantin, Rockville), all on brief, for appellant.

Antoinette Patterson LeBel (John J. Brennan, III, Jackson & Campbell, P.C., Washington, D.C.), all on brief, for appellee.

Before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

McAULIFFE, Judge.

The District of Columbia Court of Appeals has certified to this Court[1] questions relating to a subrogee's rights against an automobile casualty insurer who settled with the subrogor after receiving notice of the subrogee's interest. The facts as given to us by the certifying Court, and the questions presented, are as follows:

"On May 25, 1985, Frederick J. Proctor and a passenger were traveling south on Piscataway Road in Clinton, Maryland, on Proctor's motorcycle when an automobile driven by Louise D. Thompson emerged from a driveway onto Piscataway Road. Proctor's motorcycle struck Thompson's automobile as the automobile, attempting to turn northward, crossed the southbound lane....

"Investigating police officers determined that the motorcycle was being driven at a very high rate of speed, in excess of sixty-five miles per hour. It was also determined that Proctor, the driver of the motorcycle, had been drinking, and several witnesses reported that the motorcycle had rapidly accelerated just before the collision.

"Group Hospitalization Medical Services, Inc. ("GHI"), had a health care contract with Mr. Proctor which provided that, in the event he was injured as a result of the negligence of another person, GHI would be subrogated

1. The Maryland Uniform Certification of Questions of Law Act authorizes this Court to answer questions of a certifying court concerning Maryland law. See §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article, Maryland Code (1974, 1989 Repl.Vol.); Maryland Rule 8–305; and § 11–723(h) of the District of Columbia Code (1981, 1989 Repl.Vol.).

to Proctor's rights against that person. Pursuant to this contract, GHI paid $21,518.26 for medical services rendered to Proctor as a result of his injuries. The contract provided further that GHI would have the right to obtain from Proctor any payments he received from that other person as the result of such injuries, or from any insurance company making such payments, as much of the recovery as would reimburse GHI for any medical expenses it paid.

"At the time of the accident, Louise Thompson was insured by Government Employees Insurance Company ("GEICO") with policy limits of $25,000/$50,000 per accident. On December 19, 1985, GHI sent GEICO written notice of its subrogation right regarding any settlement agreement that GEICO might make with Proctor. On the same date, GHI sent a letter to Proctor and his attorney notifying them of GHI's right of subrogation and its right to recover any fees for medical expenses received by them from, or on behalf of, the other party involved in the accident, Louise Thompson.

"On January 7, 1986, GEICO, despite the contributory negligence of Mr. Proctor (which is stipulated in this case), settled Proctor's claim against Thompson for the policy limit of $25,000. An internal GEICO memorandum dated January 2, 1986, reveals that GEICO had received GHI's notice of December 19, 1985, which the memorandum characterized as a 'lien letter.' After receiving payment from GEICO, Proctor declared bankruptcy. GHI filed a claim in the bankruptcy proceedings to recover the amount of its subrogated medical expenses, but the claim was disallowed as not recoverable from Proctor.

"On May 14, 1986, GHI sent a second letter to GEICO, again giving notice of GHI's right of subrogation and the amount claimed, $21,518.26. GEICO replied in a letter dated June 9, 1986, informing GHI that $25,000 had been paid to Proctor and his attorney on January 7, and stating that since the policy limit had been exhausted, GEICO would not honor any subrogation lien.

"GHI then filed this action in the Superior Court of the District of Columbia seeking judgment against GEICO in the amount of its subrogation claim, plus interest and costs. The trial court granted summary judgment for GHI, and GEICO brought this appeal.

"This appeal presents two questions of law:

"1. Under Maryland law, may GEICO defend against GHI's subrogation claim by asserting that Proctor was contributorily negligent, despite having been notified of GHI's right of subrogation before it paid Proctor's claim against Thompson, GEICO's insured? . . .

"2. Under Maryland law, did a contractual relationship exist between GHI (as Proctor's subrogee) and GEICO, so that GEICO's failure to include GHI in its settlement negotiations with Proctor constituted a breach of contract? . . ." We answer question 1 "yes" and question 2 "no."

GHI advances three alternative theories of recovery against GEICO. First, GHI claims it acquired a lien against funds in GEICO's hands when it gave GEICO notice of its subrogation claim, and the lien was not defeated by GEICO's payment to Proctor. Second, by its payment to Proctor, GEICO waived any right it may have had to plead contributory negligence or otherwise contest its liability for damages caused by the accident. Third, GEICO, by its action or inaction, became contractually obligated to pay GHI's claim. GEICO, although eschewing any right to rely upon the release given it by Proctor, and abandoning its earlier contention that it could not be made to pay more than its policy limits, denies direct liability to GHI. We address GHI's contentions separately.

### The Lien Theory

GHI, perhaps inspired in part by the language of its own letter informing GEICO that its "present total lien is $21,474.72," and encouraged by GEICO's internal memorandum characterizing GHI's communication as a "lien letter," claims a lien upon funds in the hands of GEICO. GHI

offers no authority for the contention that a subrogee acquires a lien when it obtains its subrogation rights, and we know of none. A subrogee acquires no greater rights than those possessed by the subrogor. *Poe v. Phila. Casualty Co.*, 118 Md. 347, 353, 84 A. 476 (1912); *General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F.Supp. 931, 935 (D.Md.1971); 16 *Couch on Insurance 2d* § 61:36 (rev. ed. 1983). Proctor never acquired a lien against GEICO; neither, therefore, did GHI.

## Waiver

■ GHI contends that GEICO's payment to Proctor constituted an implied waiver of GEICO's right to raise the defense of contributory negligence—indeed to raise any defense related to liability—in a claim brought by Proctor's subrogee for damages arising out of this accident.

■ The doctrine of waiver may operate to deprive an insurer of a right it would otherwise enjoy. *St. Paul Fire & Mar. Ins. v. Molloy*, 291 Md. 139, 144–45, 433 A.2d 1135 (1981); *A/C Electric Co. v. Aetna Ins. Co.*, 251 Md. 410, 419, 247 A.2d 708 (1968). We have defined waiver in this context as " 'the intentional relinquishment of a known right' existing for the benefit of the insurer." *St. Paul Fire & Mar. Ins.*, 291 Md. at 145, 433 A.2d 1135, quoting from *Rubinstein v. Jefferson Nat'l Life*, 268 Md. 388, 392, 302 A.2d 49 (1973). In general application, we have defined waiver as

the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances.

*Food Fair v. Blumberg*, 234 Md. 521, 531, 200 A.2d 166 (1964). In 16B Appleman, *Insurance Law and Practice* § 9085 (1981), the authors note that waiver in insurance law requires "an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or

constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish."

■ The doctrine of waiver as applied to insurance contracts is subject to a very important qualification. Stated most succinctly in *Aetna Cas. & Sur. Co. v. Urner*, 264 Md. 660, 668, 287 A.2d 764 (1972), it is that "[i]nsurance *coverage* can not be established by waiver." (Emphasis added.) [2] The general rule and the exception were explained in *A/C Electric Co. v. Aetna Ins. Co., supra*, 251 Md. at 419, 247 A.2d 708:

> It is well recognized that an insurer may, by its conduct, be deemed to have waived a condition of its policy or some irregularity on the part of its insured, *if no extension of coverage results.* (Emphasis added.)

Judge Wilner, writing for the Court of Special Appeals in *Insurance Co. of N. Amer. v. Coffman*, 52 Md.App. 732, 742–43, 451 A.2d 952 (1982), took note of the exception to the rule of waiver:

> [T]he Court of Appeals sees a distinction between defenses founded upon lack of basic coverage and those arising from the failure of the claimant to satisfy some 'technical' condition subsequent. The former, it is apparent, may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company.

GHI does not argue that it acted, or failed to act, in reliance upon any representation made by GEICO. Thus, we need not decide whether coverage may ever be extended by estoppel, as opposed to waiver. *See Prudential Ins. Co. v. Brookman*, 167 Md. 616, 620–21, 175 A. 838 (1934); *Bower*

---

**2.** This exception to the general rule of waiver in insurance matters is recognized by a substantial majority of state courts. *See* Annot., *Comment Note: Doctrine Of Estoppel Or Waiver As Available To Bring Within Coverage Of Insurance Policy Risks Not Covered By Its Terms Or Expressly Excluded Therefrom*, 1 A.L.R.3d 1139, § 3 at 1147–50 (1965). *See also* 16B Appleman, *Insurance Law and Practice* § 9090 (1981).

*& Kaufman v. Bothwell,* 152 Md. 392, 396–97, 136 A. 892 (1927); *Snyder v. Travelers Insurance Company,* 251 F.Supp. 76, 79–80 (D.Md.1966).

Although the automobile insurance policy issued by GEICO is not before us, we assume that under its liability coverage, GEICO undertook to pay all sums (within policy limits) which its insured might become legally liable to pay because of bodily injury or property damage caused by accident resulting from the ownership, maintenance, or use of the insured vehicle.

A strong argument may be made that even if the circumstances of this case are sufficient to permit a finding of implied waiver, the waiver cannot be utilized in the manner claimed by GHI because to do so would amount to extending the coverage of the policy. In this action against GEICO, GHI contends that GEICO is obligated to pay GHI's claim in full, without any proof of liability of GEICO's insured. GEICO argues that if GHI is correct in its argument concerning waiver, the coverage of GEICO's policy would be expanded from "payment of damages the insured may become legally obligated to pay" to "payment of all damages arising from an accident involving the insured, whether or not the insured is legally liable for those damages," thus effectively creating a new insurance contract.

We need not and do not resolve this question. Even if we assume, arguendo, that the use of a waiver to preclude the assertion of a defense to liability does not amount to an expansion of coverage, that would not be of any benefit to GHI, for we conclude that under Maryland law there was no implied waiver under the facts of this case.

GEICO's payment to Proctor, rather than representing an intentional relinquishment of a known right existing for the benefit of GEICO, more likely represented an effort on the part of GEICO to protect its insured from a possible judgment in excess of policy limits, and concomitantly, to protect itself against a claim for excess benefits based upon a bad

faith refusal to settle within policy limits. *See Fireman's Fund v. Continental Ins. Co.*, 308 Md. 315, 318, 519 A.2d 202 (1987) (insured has a cause of action against its insurance company for bad faith refusal to settle a claim within the policy limits).

Proctor apparently suffered serious injuries as a result of this accident. Had he recovered in an action against GEICO's insured, there was a significant probability that the verdict would have substantially exceeded policy limits. Although the facts of the accident suggest that Proctor's right to recover damages might be barred by his contributory negligence, GEICO was faced with the fact that its insured had entered a through highway from a driveway. Maryland law requires that "[t]he driver of a vehicle about to enter or cross a highway from a private road or driveway ... shall stop" and "shall yield the right-of-way to any other vehicle approaching on the paved highway." Section 21–404(a) & (b) of the Transportation Article, Md.Code (1977, 1987 Repl.Vol.). For a great many years this "boulevard rule" virtually precluded a successful defense on the part of the unfavored driver. Writing for this Court in *Sun Cab Company, Inc. v. Cusick*, 209 Md. 354, 359, 121 A.2d 188 (1956), Judge Delaplaine explained the earlier effect of this law:

> [W]here the driver of a motor vehicle enters a through highway in disregard of the boulevard law and collides with a vehicle traveling on the through highway, the collision can be attributed only to his negligence. It has been held that where the driver on an unfavored highway is about to enter a through highway designed to speed traffic, his duty to stop and to yield the right of way is so imperative that excessive speed of the driver on the through highway will ordinarily not be considered a contributing factor.

*See also Davis v. Taylor*, 217 Md. 84, 86–87, 141 A.2d 706 (1958) (no defense that favored driver was coming "like a bullet").

The rigors of the "boulevard rule" were somewhat abated in 1971, when the General Assembly redefined "right-of-way" to mean "the right of one vehicle or pedestrian to proceed in a lawful manner on a highway in preference to another vehicle or pedestrian." Section 21–101(r) of the Transportation Article. As this Court pointed out in *Covington v. Gernert*, 280 Md. 322, 325, 373 A.2d 624 (1977), a vehicle traveling the wrong way on a one way street was not "proceed[ing] in a lawful manner," and thus was not entitled to a preference over vehicles entering the highway. GEICO, while recognizing that it might argue that Proctor was not "proceed[ing] in a lawful manner," apparently also recognized the possibility of loss with the accompanying risk of a substantial verdict against its insured.

Under these circumstances, it can hardly be argued that GEICO's settlement with Proctor represented an intentional relinquishment of its right to defend against GHI's subrogated claim. Proctor's claim was unliquidated, and if successful posed a significant threat of an excess verdict. GHI's claim was liquidated, and posed no threat of an excess verdict against GEICO's insured, even if GHI were successful. GEICO assumed the risk that it would be required to pay in excess of its policy limit when it paid Proctor $25,000 with notice that GHI held a subrogated claim of $21,518.26. Had GHI sued GEICO's insured and won, GEICO would have been required to pay the claim, and GEICO's insured was not, therefore, placed at risk. *Cleaveland v. C. & P. Telephone*, 225 Md. 47, 169 A.2d 446 (1961).

Under those circumstances, and particularly because GHI's right to enforce its subrogation claim was not in any way affected by GEICO's settlement with Proctor, GEICO may properly fulfill its duty to its insured, and protect itself, without being charged with a waiver of its right to contest GHI's claim. In short, there was no express waiver, and Maryland law will not imply a waiver under these circumstances.

*Contract*

 GHI also argues that GEICO, by its inaction or action, contracted with GHI to pay its claim. The inaction GHI relies upon is the silence of GEICO in the face of GHI's notification of its subrogated interest. Although silence and inaction can operate as an acceptance of an offer in a few, limited circumstances,[3] those circumstances were not present in this case. Merely stating the proposition that a failure to respond to a notice of a subrogation claim amounts to an agreement to pay that claim is sufficient to discredit the proposition. GEICO's silence conferred no benefit upon GHI.

 The second prong of GHI's contract argument is that GHI must necessarily have been a party to GEICO's negotiations with Proctor, and therefore GEICO's agreement to pay must embrace GHI's claim as well as that of Proctor. This contention fails because GHI need not have been, and was not in fact, a party to the negotiations and settlement with Proctor. *Erie Ins. Exch. v. Calvert Fire Ins.*, 253 Md. 385, 252 A.2d 840 (1969), relied upon by GHI, is factually distinguishable from the case before us. In *Erie*, Calvert Fire Insurance Company paid its insured under an automobile collision coverage, and sent written notice of its subrogated claim to Erie Insurance Exchange, the liability carrier for the alleged tort-feasor. Erie responded in writing, advising Calvert it could not pay Calvert's subrogation claim until it had settled personal injury claims that had been filed by Calvert's insured. Erie thereafter responded to several status requests by Calvert, but ultimately did not tell Calvert when it reached a settlement with Calvert's insured. Calvert, barred by limitations from bringing a subrogation action against Erie's insured, sued Erie for breach of contract. We affirmed a judgment in favor of Calvert, finding that the trial judge did not err in concluding that "[Calvert] placed [Erie] on notice of its

---

**3.** See *Restatement (Second) of Contracts* § 69 (1982); 1 *Corbin on Contracts* §§ 72–75 (1963), §§ 72–75B (1991 Supp.).

subrogated claim, *[Erie] promised to pay the claim in return for [Calvert's] forbearance,* and ... [Erie] settled the claim with [Calvert's] insured without [Calvert's] knowledge or consent." *Id.* at 390, 252 A.2d 840 (emphasis added). The obvious distinction between *Erie* and the case before us is that in *Erie* the Court found that in its written communications to Calvert, Erie had agreed to pay the claim, and that Calvert's forbearance constituted adequate consideration for that promise. Here, GEICO did not promise to pay GHI, and did not expressly or implicitly request that GHI forbear further action.

*Underwriters at Lloyds, London v. Richards Frgt. L.,* 12 N.Y.2d 334, 239 N.Y.S.2d 657, 190 N.E.2d 8 (1963), apparently goes further than *Erie* in granting a subrogee contract rights as a result of negotiations with the insurer of the alleged tort-feasor. *Underwriters* involved the legal sufficiency of the subrogee's complaint against the tort-feasor's insurer. The Court of Appeals of New York, drawing inferences from the complaint and from a letter attached to it, found that:

> The allegations of the complaint, by fair and reasonable intendment, are susceptible to the interpretation that appellant became a party to the claim ... and remained a party throughout the negotiations for a settlement, and hence had a contractual interest in the matter. Indeed this conclusion is supported by the offer of settlement contained in the letter from the agents of Jersey to the agents of appellant Lloyds, a copy of which is attached to the complaint.

> \* \* \* \* \* \*

> If it is established on a trial that appellant was actually a party to the subrogation negotiations, then it may also be found that its right to the negotiated fund could not be ignored equitably or legally by Jersey, and the latter is liable to appellant on a contractual basis even though it may have parted with the fund by an improvident payment. . . .

239 N.Y.S.2d at 659–660, 190 N.E.2d at 9–10. Without suggesting that we would reach the same result as the New York Court of Appeals under similar circumstances, we find that *Underwriters* may be distinguished, because in the case before us there is no suggestion that GHI was involved in any of the negotiations or that GEICO ever communicated with GHI concerning its claim. Under the facts as presented to us, we find no contract right in favor of GHI.

### Conclusion

In summary, we find that GHI did not obtain a lien against funds in the hands of GEICO; that GEICO cannot assert as a defense to GHI's claim the release it obtained from Proctor; that GEICO is not barred from asserting the defense of contributory negligence, or any other defense it may have on behalf of its insured; that GEICO remains liable to pay GHI's claim if GHI is able to establish the legal liability of GEICO's insured for damages sustained in the automobile accident; and, that GEICO did not incur any contract liability to GHI.

QUESTIONS OF LAW ANSWERED AS HEREIN SET FORTH; COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.

ELDRIDGE, J., concurs in the result only.