37 F.3d 1493
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Michael N. DOTSON; Wayne Musgrove, and all others similarly
situated, Plaintiffs,
v.
Lemuel CHESTER; Jack Colburne; Charles Dayton; William I.
Wingate; Calvin Travers, in their individual and
official capacities, Defendants & Third Party
Plaintiffs-Appellants,
Donald SATTERFIELD; Phillip H. McKelvey, Sheriff,
Dorchester County, Defendants,
v.
AMERICAN JUSTICE INSURANCE RECIPROCAL, Third Party Defendant-Appellee,
and
American Risk Pooling Consultants, Incorporated; the Cover
X Corporation, Third Party Defendants.
 No. 94-1194.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1994.
Decided Oct. 12, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Benson E. Legg, District Judge. (CA-87-3123-L)
 James Patrick Gillece, Jr., Miles & Stockbridge, Baltimore, Md., for appellants.
 Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, Md., for appellee.
 On Brief: Michael A. Brown, Miles & Stockbridge, Baltimore, Md.; Roger D. Redden, Lynette M. Phillips, Piper & Marbury, Baltimore, Md., for appellants.
 Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, Baltimore, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Prisoners in Dorchester County, Maryland sued the Dorchester County Commissioners ("Commissioners") and the County's Sheriff and after substantial litigation achieved some injunctive relief by way of settlement. The Sheriff's insurer provided counsel for the defendants and was actively involved in the litigation. The district court awarded attorney's fees to the plaintiffs under 42 U.S.C. Sec. 1988, apportioning the payment of the award between the defendants. The Sheriff was to pay a four-fifths and the Commissioners a one-fifth share of the award. The Sheriff, however, did not pay his portion, and the Commissioners ultimately paid the entire amount. The Commissioners sought a declaration in the district court, by way of a third-party complaint, that the Sheriff's liability insurer, the American Justice Insurance Reciprocal ("AJIR") was liable for reimbursement to them of the amount paid for attorney's fees and expenses.[1]
 
 
 2
 The action in which attorney's fees and expenses were awarded was one in which inmates at the Dorchester County jail between November, 1987 and February, 1988, brought a suit alleging that conditions existing in the jail unconstitutionally impaired inmate civil rights in violation of 42 U.S.C. Sec. 1983. They initially named the Commissioners as defendants and later joined the Sheriff as a defendant in the lawsuit, because the Sheriff was the elected official responsible for the operation of the jail.
 
 
 3
 In January, 1988, American Risk, by its underwriting management affiliate, Cover X, obtained a policy from AJIR and retained counsel to represent the Sheriff in the civil rights litigation. Thereafter, counsel for American Risk and Cover X pursued the Sheriff's and the Deputy Sheriff's defense as required by the terms and conditions of the Sheriff's insurance policy.
 
 
 4
 The covering policy was originally issued on October 7, 1986. That policy obligated the insurer (referred to as "Pool") to pay certain costs taxed against the Sheriff in civil rights suits that it defended. Specifically, the policy provided, in pertinent part,
 
 
 5
 Section I Coverages: To pay on behalf of the Member all sums which the Member shall become legally obligated to pay as damages because of (1) "bodily injury" or (2) "personal injury" or (3) "property damage" caused by an "occurrence" and arising out of the Member's occupancy, maintenance or use of official premises and the Member's operations in performance of or failure to perform official duties. The Pool shall have the right and duty to defend any "suit" against the Member seeking damages on account of such "bodily injury," "personal injury," or "property damage," even if any of the allegations of the "suit" are groundless, false, or fraudulent, and may make such investigation at settlement of any "claim" or "suit" as it deems expedient but the Pool shall not be obligated to pay any "claim" or "judgment" or to defend any "suit" after the applicable limit of the Pool's liability has been exhausted by payment of judgments or settlements.
 
 
 6
 No other obligation or liability to pay sums or perform acts or services as covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.
 
 
 7
 In SECTION V--DEFINITIONS, the policy stated that
 
 
 8
 4. "Damages" includes damages for death and for care and loss of services resulting from "bodily injury" and damages for loss of use of property resulting from "property damage."
 
 The policy also provided that
 
 9
 7. "personal injury" means ...
 
 
 10
 (d) violation of rights as protected by civil rights statutes.
 
 
 11
 The policy, under the SUPPLEMENTARY PAYMENTS portion of the COVERAGE part provided:
 
 
 12
 The Pool will pay with respect to any "claim" or "suit": (a) all expenses incurred by the Pool, all costs taxed against the Member in any "suit" defended by the Pool and all interests on the entire amount of any judgment therein which accrues after entry of the judgment and before the Pool has paid or tenured or deposited in court that part of the judgment which does not exceed the limit of the Pool's liability thereon;....
 
 Section V--DEFINITIONS--provided that
 
 13
 10. "Suit" means a civil proceeding in which damages because of "bodily injury," "personal injury" or property damage" to which this coverage applies are alleged. "Suit" includes any arbitration proceeding alleging such damages to which you must submit or submit with our consent.
 
 
 14
 In October, 1988, the parties negotiated a settlement agreement, which resolved the claims against all parties to the litigation. The plaintiffs, having pleaded only equitable relief, settled for that. On January 20, 1989, the district court awarded plaintiffs their litigation costs, including attorneys' fees, pursuant to 42 U.S.C. Sec. 1988. The Commissioners were assessed one-fifth of all costs; the Sheriff was assessed four-fifths of all costs. The Commissioners promptly paid the portion of the Court ordered award allocated to them. The Sheriff, however, did not pay his portion of the fee award.
 
 
 15
 On March 3, 1989, plaintiffs made demand on the Sheriff's insurance carrier, AJIR, American Risk and Cover X for payment of the January 20, 1989 award of costs against the Sheriff. That demand was ignored. On April 3, 1989, due to American Risk's and Cover X's refusal to pay the Sheriff's litigation costs, plaintiffs filed a writ of garnishment on Dorchester County's treasury bank accounts. The writ of garnishment was quashed by the district court on April 5, 1989. On May 3, 1989, the district court again taxed litigation costs against the Sheriff. Additionally, the district court once more taxed costs against the Sheriff on June 7, 1989, and urged plaintiffs' counsel to renew their demand on the Sheriff's insurers for reimbursement of the Sheriff's portion of plaintiffs' fee awards. Plaintiffs again demanded the payment of costs from American Risk and Cover X. The demand was rejected.
 
 
 16
 Plaintiffs then reinstituted their garnishment efforts against Dorchester County's treasury on June 21, 1990. On June 27, 1990, the Commissioners petitioned this Court to stay plaintiffs' garnishment action. On September 6, 1990 we stayed plaintiffs' garnishment writ, pending its resolution of Dorchester County's responsibility for the 42 U.S.C. Sec. 1988 awards entered against the Sheriff. Nine months later on June 24, 1991 we issued our decision, finding Dorchester County responsible for all litigation costs arising out of the Sheriff's management of the Jail, based on his status as the final policy making authority for Dorchester County in the area of corrections. Dotson v. Chester, 937 F.2d 920 (4th Cir.1991).
 
 
 17
 The Commissioners paid the Sheriff's Sec. 1988 obligation to pay costs that plaintiffs' attorneys incurred during the course of the garnishment and collection activities. After having paid a total of $332,746.02, the Commissioners filed a Declaratory Judgment Complaint in the district court to determine American Risk's and Cover X's responsibility for the Sheriff's portion of the 42 U.S.C. Sec. 1988 costs.
 
 
 18
 As stated correctly by the district court, the question in the instant litigation is whether the award of fees and costs pursuant to 42 U.S.C. Sec. 1988 constitutes covered costs within the scope of the Supplementary Payments section of the relevant insurance policy. Finding that the plaintiffs' complaint had prayed only for injunctive relief and not for damages, the district court held that the provisions of the policy which would trigger coverage for costs assessed against the insured were not met. Since the district court found that there was no coverage for the costs taxed against an insured in a suit for injunctive relief, it determined that the "supplementary payments" part of the policy, under which coverage for such costs is included, was never triggered, and therefore that the "costs" taxed to the defendants in the case brought by the prisoners were not covered costs under the terms of the policy.
 
 
 19
 On appeal, the Commissioners have argued that the district court erred by failing to interpret the technical definition of damages contained in the insurance policy itself. The policy has defined damages as "includ[ing] damages for death and for care and loss of services resulting from "bodily injury" and damages for loss of use of property resulting from "property damage." The Commissioners have sought to read the word "includes" and the phrase following it as merely providing illustrative examples of the kinds of damages covered, rather than as limiting coverage to those items listed. Moreover, the Commissioners have insisted that the policy makes no distinction between monetary damages and injunctive relief for the purposes of determining when costs should be borne by the insurance company.
 
 
 20
 A discussion of the governing state law is illuminating. "Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." Bausch & Lomb v. Utica Mutual Ins. Co., 625 A.2d 1021, 1031; 330 Md. 758 (Md.1993) (citing Mitchell v. Maryland Casualty, 324 Md. 44, 56, 595 A.2d 469 (1991)). Unless there is an indication that the parties intended to use words in the policy in a technical sense, the Maryland courts accord the words their usual, ordinary, and accepted meaning. Id."A word's ordinary signification is tested by what meaning a reasonably prudent lay person would attach to the term." Id. (citing Pacific Indem. v. Interstate Fire & Cas., 302 Md. 383, 388, 488 A.2d 486 (1985)). "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Id. (citation omitted). Rather, as with contracts generally, the parties' intention is to be ascertained from the policy, as a whole." Only when there is ambiguity may the courts consider extrinsic evidence to the meaning of policy language. Cheney v. Bell Nat'l Life Ins. Co., 315 Md. 761, 766-67, 556 A.2d 1135 (1989).
 
 
 21
 While we have interpreted Maryland law as defining damages to mean payments to third parties having a claim for legal damages, as distinguished from claims for traditional equitable relief, see Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348, 1352 (4th Cir.1987), cert. denied, 484 U.S. 1008 (1988), the Maryland Court of Appeals recently has modified our interpretation of Maryland law. See Bausch & Lomb, 625 A.2d at 1032. Rather than draw a distinction between law and equity, the Maryland courts have stated that
 
 
 22
 we accord to words their usual and accepted signification. "Damages" in common usage means the reparation in money for a detriment or injury sustained. The reasonably prudent layperson does not cut nice distinctions between the remedies offered at law and in equity. Absent an express provision in the document itself, insurance policy-holders surely do not anticipate that coverage will depend on the mode of relief, i.e. a cash payment rather than an injunction, sought by an injured party.... The ordinary person understands "damages" as meaning money paid to make good an insured loss.
 
 
 23
 Id. at 1032-33.
 
 
 24
 Although the Maryland Court of Appeals rejected the "narrow, technical" definition it believed we had embraced in Armco, supra, the Court also expressly stated that "[t]he payment of damages--even broadly defined--remains distinct from other expenditures such as fines, penalties or assessments, which would not be covered under the ... policy. Our construction does not oblige the insurer to pay any and all sums attendant to an insured loss." Id. at 1033 (citation omitted).
 
 
 25
 The Commissioners have argued that in the instant case, since damages are defined by the insurance contract, the district court should have restricted itself to interpretation of that contract in rendering its determination. In the Commissioners' view, the district court, had it interpreted the term damages properly would have concluded that the term "simply covers all 'damages' assessed against the insured." The definition itself reads: "[D]amages includes damages for death and for care and loss of services resulting from 'bodily injury' and damages for loss of use of property resulting from 'property damage.' " The Commissioners then would read the word "includes" as an introductory device for a list of illustrations of damages that are covered, rather than a limiting device. That argument, as far as it goes, appears to be correct. See Group Health Association v. Blumenthal, 295 Md. 104, 110, 453 A.2d 1198, 1203 (1983) (include is construed to mean "comprising by illustration and not by way of limitation"); United States v. New York Telephone Co., 434 U.S. 159, 169 n. 15 (1977).
 
 
 26
 The Commissioners' argument misses the point, however. Under the policy at issue, as the district court found, the payment of costs such as attorneys fees awarded under 42 U.S.C. Sec. 1988, are awarded under the "supplementary payments" section of the policy. The "supplementary payments" provision provides in pertinent part:
 
 
 27
 The Pool will pay with respect to any "claim" or "suit":
 
 
 28
 (a) all expenses incurred by the Pool, all costs taxed against the Member in any "suit" defended by the Pool and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Pool has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Pool's liability thereon....
 
 
 29
 (Emphasis added). The word "suit" likewise is defined by the policy:
 
 
 30
 "Suit" means a civil proceeding in which damages because of "bodily injury," "personal injury" or "property damage" to which this coverage applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.
 
 
 31
 (Emphasis added).
 
 
 32
 When the insurance contract at issue is read as a whole, the "supplementary payments" provision only applies where costs are taxed in a "suit." A proceeding that does not allege damages is not a "suit" as expressly defined by the policy. Although the Commissioners are correct that the term "damages" is defined in the definitions section of the contract, that definition only becomes relevant when there has been brought a "suit" under the terms of the contract. As the district court found, it simply cannot be maintained in the instant case that any damages were alleged by the civil rights plaintiffs in the underlying suit. Theirs was solely a claim for declaratory and injunctive relief. The definition of damages on which the appellants rely so heavily (even were it illuminating) appears not to apply to the facts of the instant case.
 
 
 33
 Moreover, to the extent that Maryland has rejected a "technical" dividing line between equity and law with respect to the definition of damages, we are reluctant to extend the coverage of Maryland law to costs, such as attorney's fees, arising out of suits where those costs are not contractually defined as damages. While Maryland has concluded that the common understanding of "damages" includes both suits for injunctive and monetary relief, there is no indication that damages, commonly understood, include assessed attorney's fees under Sec. 1988. See Sullivan County v. Home Indem. Co., 925 F.2d 152, 153 (6th Cir.1991) (unlike some attorneys' fee statutes, which unambiguously define fees as damages, Sec. 1988 unambiguously defines them as costs); see also 42 U.S.C. Sec. 1988 (The court "may allow ... a reasonable attorney's fee as part of the costs.")[2]
 
 
 34
 In the absence of an expression by the Maryland courts to the contrary or contractual language exhibiting the intent to include attorneys fees as damages, we decline to extend the Maryland definition of damages to include attorneys' fees (i.e., costs) assessed under Sec. 1988.
 
 The judgment is accordingly
 
 35
 AFFIRMED.
 
 
 
 [1]
 The Sheriff's insurer is generally referred to herein as "AJIR." It should be noted that AJIR is the successor to the Sheriff's original insurer, The Star Pool, a group self-insurance pool. The record also reflects references to American Risk Pool and Consultants, Inc., and Cover X Corporation, original third-party defendants in the declaratory judgment action, for whom AJIR was substituted
 
 
 [2]
 The fact that the insurer provided counsel to the defense should not be allowed to change the result which we have reached. The duty to defend is broader than the duty to indemnify. Brohawn v. Transamerica Ins. Co., 276 Md. 396, 347 A.2d 842, 850 (1975) (insurer must defend if there is the "potentiality " that the claim could be covered by the policy). Under Maryland law, an insurer's actions cannot work to waive the assertion of a defense of a basic lack of coverage under a policy. GEICO v. Medical Serv., 322 Md. 645, 589 A.2d 464 (1991) (advisory opinion); St. Paul Fire & Marine Ins. Co. v. Molloy, 291 Md. 139, 147-49 n. 4; 433 A.2d 1135 (1981); Insurance Co. of N. Am. v. Coffman, 52 Md.App. 732, 451 A.2d 952 (1982)
 In the absence of any evidence that the Sheriff, and through him the Commissioners, were entitled to coverage, the insurer's willingness to defend the suit did not create an obligation to provide that coverage.