680 A.2d 547

**NATIONWIDE MUTUAL INSURANCE CO.**

v.

**REGIONAL ELECTRIC CONTRACTORS, INC.**

**No. 1299, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 31, 1996.

Reconsideration Denied Aug. 29, 1996.

82

Richard D. Rosenthal, Baltimore, and Mark I. Cantor, Owings Mills, for Appellant.

David M. Kopstein (Dross, Levenstein, Perilman & Kopstein, on the brief), Washington, DC, for Appellee.

Argued before WENNER, MURPHY and EYLER, JJ.

WENNER, Judge.

The issues before us in this appeal principally involve the construction of a commercial liability insurance policy. Appellant, Nationwide Mutual Insurance Company ("Nationwide"), noted an appeal from the entry of a judgment in favor of appellee, Regional Electrical Contractors Inc. ("Regional") following a non-jury trial in the Circuit Court for Prince George's County. On appeal, appellant has presented us with three (3) questions which, for clarity, we have rephrased and reordered:

(1) Does the insurance policy require Nationwide to cover property damages to a third party before Regional has been found to be liable for the claimed damages?

(2) May Regional file a complaint seeking damages on behalf of a third party whose property was damaged?

(3) Was there sufficient evidence to support a finding that the "your work" exclusion in the policy did not apply?

For reasons explained below, we shall affirm the judgment of the circuit court.

### Facts

Regional purchased a commercial liability insurance policy from Nationwide providing that Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or *'property damage'* to which this insurance applies." (Emphasis added). The policy further provides that "[t]his insurance applies to ... property damage only if (1) the ... property damage is caused by an occurrence ("an accident") that takes place in the coverage territory." The policy defines "coverage territory" as "electrical work within buildings."

The agreement did not, of course, provide protection from all risks. Excluded was property damage to

[t]hat particular part of real property on which [appellee] or any contractors or subcontractors working directly or indirectly on [Regional's] behalf are performing operations, if the "property damage" arises out of those operations; or [t]hat particular part of any property that must be restored, repaired or replaced because **"your work"** was incorrectly performed on it. (Emphasis added.)

On 19 March 1993, a switchboard [1] exploded while Regional's employee, Ronald Marceron, was "phasing" or "wringing out" certain pairs of wires leading from the switchboard to a "reheat" unit in another room. This was to ensure that the

---

1. The switchboard was a junction point for a number of high voltage lines.

proper wires were connected to the proper equipment. Only Marceron witnessed the explosion.

Although injured, Marceron remained conscious throughout the incident. Marceron avers that he has no recollection of the explosion, or of having done anything that would have caused it.[2] Nonetheless, Regional's Vice President/Treasurer, Tony Allen Calloway, initially believed Marceron had "inadvertently touched the wire that he was using to wring them out, the grounded wire, to the hot side of the circuit breaker," causing the explosion. Nationwide's initial investigation led it to the same conclusion.

On the day after the accident, Calloway notified Nationwide's agent, Keith D. Ludka, of the accident. Ludka told him that "[Nationwide] would take care of it." In fact, Ludka admitted telling Calloway, "that's why you have insurance." Although Regional repaired the damages and submitted an invoice to Nationwide for reimbursement, Nationwide denied the claim on grounds that it was subject to the "your work" exclusion, despite having covered the damages to a "chiller unit."

Predictably, Regional filed a complaint charging Nationwide with breach of contract. At trial, the presiding judge orally converted Regional's complaint into one seeking declaratory relief. After considering the evidence and argument of counsel, she declared the loss to be covered by the policy and not subject to the "your work" exclusion. In addition, the presiding judge also declared that Regional was entitled to prejudgment interest. This appeal followed.

## Discussion

### I.

Nationwide first contends that the trial judge's findings of fact are clearly erroneous, and that it denied coverage because "it had not been demonstrated [Regional had] caused the

---

2. There was testimony that the explosion could have resulted only from a grounding of a high voltage line.

occurrence." Thus, Nationwide believes Regional had "no legal obligation ... to pay for damages, which is a requirement under the policy." Even had Regional been legally obligated to pay the damages, "the occurrence was excluded from coverage because of the 'your work' exclusion." [3]

■ As we begin, we point out that "[w]here there is a tort suit against the insured, the damages [4] which the insured is 'legally obligated to pay,' within the meaning of the coverage language, are those determined by the judgment in or settlement of the tort action." *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 261, 572 A.2d 154 (1990) (footnote added). In other words, "a liability insurer is bound by the finding in a tort action against its insured that the insured was liable due to negligence," *Atwood,* 319 Md. at 260, 572 A.2d 154 (citations omitted). Accordingly, Nationwide "would normally be bound by a judgment in a tort case." *Id.* at 261, 572 A.2d 154.

■ In any event, Regional purportedly repaired the damaged switchboard at Ludka's suggestion, a point discussed more fully *infra.* The owner of the damaged property neither sued, nor settled with, Regional. Indeed, when the trial judge said, "Well, maybe we ought to just stop this case and wait for the property owner to sue the contractor (Regional) and see if they can prove negligence," counsel for Nationwide responded,

---

3. COMMERCIAL GENERAL LIABILITY COVERAGE FORM.
   SECTION I—COVERAGES
   COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
   1. Insuring Agreement
      a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty do defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. * * *

4. As "damages" are not specifically defined by the policy, we shall assume that the common understanding of the word controls. Webster's Third New International Dictionary (1981) defines damages as "compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right."

"well, work has already been done and the damage has already been paid for."

As we see it, that colloquy reveals that Nationwide believed Regional's repairs had satisfied potential third-party claims. Hence, it was unknown whether Regional was "legally obligated to pay" for the damages, a condition precedent to Nationwide's liability under the policy. That is, Nationwide's coverage was not available until it had been determined that Regional was legally obligated to pay. Nonetheless, our inquiry does not end here.

We first note that "[a]n insurer, prior to trial of a tort suit against its insured [by a third party], ordinarily [can] not obtain a declaratory judgment concerning policy coverage, where the coverage issue was essentially the same as an issue to be decided in the pending tort case." *Atwood, supra,* at 249, 572 A.2d 154 (citing *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975)). As we have said, however, the likelihood of a third party tort action was eliminated by Regional having repaired the damages.

Relying on *Benning v. Allstate,* 90 Md.App. 592, 602 A.2d 233 (1992), however, Regional contends that we have "recognized the right of an insured under a liability policy to sue her own insurance company after the insurance company wrongfully denied coverage, even before the insured's liability to the injured party had been determined." Regional has misread *Benning.*

In *Benning,* we permitted the appellant to proceed with an action for declaratory judgment on a discrete policy issue separate from the underlying tort cases.[5] We also pointed out in *Benning,* however, that, under *Brohawn* and its progeny, "disputes [relating to policy coverage] that are also at issue and will necessarily be decided in any underlying litigation between the claimant and the insured [as opposed to] those that are entirely independent of that litigation[,] are inappro-

---

**5.** Prior to suing the insured, the *Benning* appellant sought to have the scope of a household exclusion in the insured's policy decided.

priate for resolution in advance through declaratory judgment proceedings." *Benning*, 90 Md.App. at 600, 602 A.2d 233.[6]

We are here presented with a situation somewhat different from those in the cases we have just mentioned. Except for *Benning*, those cases involved pre-tort-trial declaratory judgment actions by the *insurer*. Here before us is a pre-tort-trial declaratory judgment action by an insured against its insurer.

Nevertheless, we find the above cited cases to be helpful. As the Court of Appeals said in *Allstate*, "[i]f the pre-tort-trial declaratory judgment proceeding were allowed, the insured would suffer great prejudice: not only would she have to defend against the plaintiff but also against the insurer." Hence, the Court went on to say that "[t]he essential unfairness to ... [the plaintiffs] of allowing Transamerica to prosecute their case, and the harsh burden of forcing Ms. Brohawn to defend against a third-plaintiff far outweigh any possible advantages advanced by Transamerica in support of granting declaratory relief." *Allstate*, 319 Md. at 257, 572 A.2d 154 (quoting *Brohawn*, 276 Md. at 406–07, 347 A.2d 842). The Court then said, "[i]nsurance company intervention in tort trials would be tantamount to authorizing direct actions by plaintiffs against defendant liability insurers. Maryland law generally precludes such actions." 319 Md. at 257, 572 A.2d 154. (citing *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 552, 403 A.2d 1229 (1979)).

As we see it, an insured's paying pre-tort-trial damages and then seeking a declaratory judgment as to the insurer's obligation under the policy would cause the insurer to "suffer great prejudice." In other words, the insured would be obligated to prove that it was "legally obligated to pay," in order to recover from its insurer. Not only would this burden

---

**6.** *See also, Washington Transit v. Queen*, 324 Md. 326, 333 n. 6, 597 A.2d 423 (1991) (Under Maryland law, actions for declaratory judgment by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, are normally excluded except when issues in the action for declaratory judgment are independent and separable from the claims in the tort action.).

eliminate the obligation of an insurer to defend its insured, it would eviscerate the insurer's right to defend claims brought against its insured. Moreover, we also believe that in a situation such as this, there is manifest opportunity for fraud and collusion between the insured and a third party—something for which no insurance company bargains.[7] *Allstate*, 319 Md. at 263, 572 A.2d 154.

## II.

Further, as the insured essentially stands in the shoes of the injured party in a declaratory judgment proceeding, we have no difficulty in concluding that it constitutes a direct action by the tort plaintiff against the insurer. Maryland law precludes such actions.[8]

■ Consequently, unless the insurer breaches its duty to defend the insured, leaving the latter to defend the claim on its own, until an insured's obligation to pay has been determined in an underlying tort trial, a pre-tort-trial declaratory judgment proceeding litigating an issue that would otherwise be decided in an underlying tort action is not permitted. As Regional's obligation to pay damages to a third party had not been determined in a tort trial, the declaratory judgment action should not have gone forward.

## III.

■ Although in Maryland it is beyond cavil that pre-tort-trial declaratory judgment proceedings are not ordinarily per-

---

7. We are not suggesting that there was fraud or collusion in the case *sub judice*. We merely point out that permitting an insured to assert its negligence on behalf of a third party would give rise to such an opportunity.

8. *See Washington Transit v. Queen*, 324 Md. 326, 332, 597 A.2d 423 (1991) ("Under this Court's decisions, a tort claimant may not maintain a direct action against the defendant tortfeasor's liability insurer until there has been a determination of the insured's liability in the tort action. Once there is a verdict or judgment in the tort action, a direct action may be maintained against the liability insurer.").

mitted on issues to be decided in the underlying tort trial, we believe Regional's prompt repairs [9] were induced by Ludka's telling Calloway to correct the damage and that Nationwide "would take care of it."

■ In most jurisdictions, the doctrines of waiver and estoppel do not "bring within the coverage of an insurance policy risks not covered by its terms, or expressly excluded therefrom." W.C. Crais III, Comment Note: DOCTRINE OF ESTOPPEL OR WAIVER AS AVAILABLE TO BRING WITHIN COVERAGE OR INSURANCE POLICY RISKS NOT COVERED BY ITS TERMS OR EXPRESSLY EXCLUDED THEREFROM, 1 A.L.R.3d 1139, 1147 (1965, 1995 supp.). With respect to the doctrine of waiver, Maryland follows the majority rule.

Although the doctrine of waiver may deprive an insurer of a right to which it would otherwise be entitled, *GEICO v. Group Hosp. Medical Serv. Inc.*, 322 Md. 645, 650, 589 A.2d 464 (1991), according to the Court of Appeals there is

> a distinction between defenses founded upon lack of basic coverage and those arising from the failure of the claimant to satisfy some 'technical' condition subsequent. The former, it is apparent, may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company.

*GEICO* [10], 322 Md. at 651, 589 A.2d 464 (quoting *Insurance Co. of N. Amer. v. Coffman*, 52 Md.App. 732, 742–43, 451 A.2d 952 (1982)); *See also Snyder v. Travelers Insurance Company*, 251 F.Supp. 76, 77–78 (D.Md.1966)(waiver or estoppel are appropriate legal theories only to negate conditions subsequent that defeat coverage, when coverage otherwise exists.).

---

**9.** During the trial, appellant questioned the accuracy of this figure, as it not only included the cost of replacing the switchboard itself, but also the profit appellee would normally earn on a job of a similar nature. That issue, however, is not before us.

**10.** Government Employees Insurance Company.

In *GEICO,* the insurer settled a claim against its insured, although "the facts of the accident suggest that the [claimant's] right to recover damages might be barred by his contributory negligence." *Id.* at 653, 589 A.2d 464. The claimant's agreement with GHI provided that, "in the event he was injured as a result of the negligence of another person, GHI would be subrogated to [his] rights against that person." *Id.* at 648, 589 A.2d 464. GHI had paid substantial medical bills.

In endeavoring to recover those sums from GEICO, GHI argued that GEICO had "waived any right it may have had to plead contributory negligence or otherwise contest its liability for damages caused by the accident." *Id.* at 649, 589 A.2d 464. The Court of Appeals pointed out that

[a]lthough the automobile insurance policy issued by GEICO is not before us, we assume that under its liability coverage, GEICO undertook to pay all sums (within policy limits) which its insured might become legally liable to pay because of bodily injury or property damage caused by accident resulting from the ownership, maintenance, or use of the insured vehicle.

A strong argument may be made that even if the circumstances of this case are sufficient to permit a finding of implied waiver, the waiver cannot be utilized in the manner claimed by GHI because to do so would amount to extending the coverage of the policy. In this action against GEICO, GHI contends that GEICO is obligated to pay GHI's claim in full, without any proof of liability of GEICO's insured. GEICO argues that if GHI is correct in its argument concerning waiver, the coverage of GEICO's policy would be expanded from "payment of damages the insured may become legally obligated to pay" to "payment of all damages arising from an accident involving the insured, whether or not the insured is legally liable for those damages," thus effectively creating a new insurance contract.

*Id.* at 652, 589 A.2d 464.

And the Court continued,

We need not and do not resolve this question. Even if we were to assume, arguendo, that the use of a waiver to preclude the assumption of a defense to liability does not amount to an expansion of coverage, that would not be of any benefit to GHI, for we conclude that under Maryland law there was no implied waiver under the facts in this case.

*Id.* at 652, 589 A.2d 464.

■ Likewise, the Nationwide/Regional policy obligated Nationwide to cover only those damages Regional was "legally obligated to pay," subject to the policy's exclusions. In other words, Nationwide was not obligated to indemnify Regional simply upon the occurrence of an accident. Were that so, Nationwide would be obligated to indemnify Regional before Regional was found to be "legally obligated to pay," expanding the policy's coverage to an extent contemplated neither by Nationwide nor by Regional. Consequently, the doctrine of waiver is of no avail to Regional.

On the other hand, although in the majority of jurisdictions estoppel may not be used to extend a policy's coverage, see 1 A.L.R.3d 1139, *supra,* we believe that the Court of Appeals would apply estoppel given appropriate circumstances.

The trial judge noted in her opinion that:

[t]here was also evidence presented at trial that [Nationwide] approved [Regional's] plans to go ahead and repair the damage as quickly as possible so as to avoid any additional liability that could result from absence of electrical power in the building which bolsters [Regional's] claim that the explosion was a covered occurrence.

We believe that the trial judge was referring to the following colloquy between Ludka and counsel for Regional:

Q: And it's your testimony under oath here today that at no time did you ever say to Mr. Calloway or to Mr. Brian Smith or anyone else at Regional Electric that Nationwide will pay this claim? Whether or not you were authorized to, your testimony is that you never made any such statements [sic].

A: I wouldn't use those words. I had said, Tony [Calloway] that's why you have insurance. We'll take care of it. And referring to his man was [sic] injured, we paid for a lot of worker comp damages. And keep in mind, when he talked to me, I had no idea of the severity of the situation. He just said he had a man get injured and there was damage to the property.

Q: And do you recall having said to him words such as "we'll take care of it?"

A: We'll take care of what we need to take care of.

Q: And how many occasions did you say those words or similar words?

A: Possibly twice.

" 'Estoppel' ... refers to an abatement raised by law of rights and privileges of the insurer when it would be inequitable to permit their assertion. It necessarily implies prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer." *Beard v. American Agency*, 314 Md. 235, 258, 550 A.2d 677 (1988) (citations omitted).[11] The trial judge apparently concluded that Ludka had induced Regional to proceed with the repairs by responding to Regional's inquiry, "That's why you have insurance. We'll take care of it." [12] Whether Ludka's response was authorized by Nationwide is irrelevant. "In order to bind the principal, ... the agent's statement ..." must be "made contemporaneously with the transaction to which it relates." *See Burkowske v. Church*

---

11. The Court of Appeals recently reiterated the elements of equitable estoppel:
   "[I]t is now well established that 'an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of the other.' Indeed, all that is needed to create an equitable estoppel is (1) voluntary conduct or representation, (2) reliance, and (3) detriment."
   *Grimberg v. Marth*, 338 Md. 546, 556, 659 A.2d 1287 (1995)(quoting *Lampton v. LaHood*, 94 Md.App. 461, 475–76, 617 A.2d 1142 (1993)) (quoting *Knill v. Knill*, 306 Md. 527, 534–35, 510 A.2d 546 (1986)).

12. We were informed at oral argument that the agent was no longer with Nationwide.

*Hospital,* 50 Md.App. 515, 520, 439 A.2d 40 (1982) (and cases cited therein). It is not only clear from the record that Regional promptly repaired the damaged switchboard following Ludka's response, but that Ludka was Nationwide's agent and his response was "made contemporaneously with the transaction to which it relat[ed]."

The Court of Appeals has previously said, *Aetna Cas. & Sur. Co. v. Urner,* 264 Md. 660, 668, 287 A.2d 764 (1972). "Insurance coverage cannot be established by waiver. * * * We perceive no conduct on the part of Aetna here which would estop it from denying coverage. The attempt by it to settle with the claimants is not a basis for estoppel."

In applying Maryland law, the Federal District Court for the District of Maryland opined that

> waiver or estoppel are appropriate legal theories only to negate conditions subsequent which defeat coverage, where coverage otherwise exists. This . . . is unquestionably correct in regard to the doctrine of waiver. (Citations omitted). It may not be correct as to the doctrine of estoppel. This Court does not read *Prudential Ins. Co. v. Brookman,* 167 Md. 616, 175 A. 838 (1934), and *Bower & Kaufman v. Bothwell,* 152 Md. 392, 136 A. 892 (1927), as foreclosing the possibility that estoppel may have the effect of extending coverage in a proper case.

*Snyder, supra,* 251 F.Supp. at 80 (1966).

We are persuaded that such is a case before us. Under these circumstances, permitting Nationwide to avoid coverage "would be contrary to equity and good conscience. . . ." *Hamlin Mach. Co. v. Holtite Mfg. Co.,* 197 Md. 148, 158, 78 A.2d 450 (1951).

Although neither of Maryland's appellate courts has squarely addressed the issue of whether the doctrine of estoppel may be used to extend insurance coverage where none otherwise exists, we believe that the doctrine must be applied on a case-by-case basis. *Johns Hopkins Hospital v. Lehninger,* 48 Md.App. 549, 563, 429 A.2d 538 (1981). Although the trial court founded its decision upon the terms of the policy, we

point out that "[a]n appellate court may, on a direct appeal, affirm a trial court's decision on any ground adequately shown by the record, even though not relied on by the trial court or the parties." *Offutt v. Montgomery County Bd. of Ed.*, 285 Md. 557, 563 n. 3, 404 A.2d 281 (1979)(citing *Robeson v. State*, 285 Md. 498, 403 A.2d 1221 (1979)). In sum, as Ludka, Nationwide's agent, induced Regional to repair the damaged switchboard, we believe Nationwide is now estopped from denying coverage, despite the fact that Nationwide's obligation under the policy did not mature. We shall therefore affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**