## HARTFORD FIRE INSURANCE COMPANY

v.

## ANNAPOLIS BAY CHARTERS, INC., Christiane G. Cellier, and Claude H. Cellier.

### No. CIV. Y–98–4033.

United States District Court, D. Maryland.

Oct. 25, 1999.

---

Hugh E. Donovan, Silver Spring, MD, for Plaintiff.

Steven J. Britz, Annapolis, MD, for Defendant Annapolis Bay Charters, Inc.

Andrew Jay Graham, Baltimore, MD, Kathleen A. Birrane, Baltimore, MD, for Defendants Christiane G. Cellier and Claude H. Cellier.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This matter is before the Court on cross-motions for summary judgment. The Plaintiff, Hartford Fire Insurance Company ["Hartford"], brought this action seeking a declaratory judgment that it is not required to defend or indemnify Annapolis Bay Charters, Inc. ["ABC"], under an insurance policy issued by Hartford. Hartford moved for summary judgment. ABC and its co-defendants, Christiane G. Cellier and Claude H. Cellier [collectively "the Defendants"], opposed the motion and filed a cross-motion for summary judgment. For the reasons that follow, the Court will grant Hartford's motion in part and deny it in part, and will deny the Defendants' cross-motion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A "genuine" issue of mate-

rial fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 817 (4th Cir. 1995). Failure to demonstrate a genuine issue for trial will result in summary judgment. *Strag v. Board of Trustees*, 55 F.3d 943, 951 (4th Cir.1995). Plaintiff's evidence, however, is to be believed and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

## II. FACTUAL BACKGROUND

The present action arose from a personal injury suit involving a boating accident. On or about May 19, 1997, Christiane and Claude Cellier chartered a boat from ABC. Two days later, Mrs. Cellier's hand was mangled when it was caught in a rope while the boat's captain was attempting to dock near Oxford, Maryland. The Celliers allege that they sustained personal injuries due to ABC's failure to select a safe boat and a competent captain, and brought suit against ABC based on legal theories of negligence, negligent misrepresentation, and constructive fraud. To ease discussion, the Court will refer to the Celliers' suit as the "Underlying Tort Action."

Hartford had issued an insurance policy to ABC on or around May 24, 1996, which the parties refer to as the "Spectrum Policy." The parties agreed that the Policy would last for one year and that Hartford would repay ABC for any sums that ABC was obligated to pay as damages "because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies." According to the Policy's "Business Liability" coverage, the insurance applies to "bodily injury" and "property damage" only if caused by an "occurrence." Under the Policy, Hartford has "the right and duty to defend any 'suit' seeking those damages," and "may at [its] discretion investigate any 'occurrence' and settle any claim or 'suit' that may result."

The Policy also contains an endorsement entitled "Limitation of Liability Coverage to Designated Premises." The Endorsement provides that "[t]his insurance applies only to 'bodily injury,' 'property damage,' 'personal injury,' and 'advertising injury,' and medical expenses arising out of the ownership, maintenance or use of the premises described in the Declarations and operations necessary or incidental to those premises." ABC's Spectrum Policy listed two premises: (1) second floor, 7310 Edgewood Road, Annapolis, Maryland as "offices—general"; and (2) first floor, 7310 Edgewood Road, Annapolis, Maryland as "hardware—retail."

After the Celliers filed their suit, ABC requested that Hartford provide a defense pursuant to the Spectrum Policy. In January 1998, Hartford concluded that "all of the counts directed against Annapolis Bay Charters are covered…." Later that year, however, Hartford informed ABC that the Underlying Tort Action did not fall within ABC's insurance coverage. In December 1998, Hartford filed this declaratory judgment action, asserting that the language of the Policy and Endorsement relieve it from defending or indemnifying ABC in the Underlying Tort Action. The Defendants disagree, claiming instead that the plain language of the endorsement and the parties' intent require Hartford to defend and indemnify ABC.

## III. DISCUSSION

### A. *Extent of Coverage*

■ The Court's interpretation of the Spectrum Policy in this case is guided by well-settled principles of Maryland law. To determine whether a liability insurer is obligated to defend its insured, a court must normally address two questions: (1) the extent of the coverage and defenses under the terms and requirements of the insurance policy; and (2) whether the allegations in the tort action potentially bring the tort claim within the policy's coverage. *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 193, 438 A.2d 282, 285 (1981). Because the potentiality evaluation is made in light of the coverage determination, the Court must first determine the scope of the policy's coverage by interpreting the policy itself, without reference to the allegations in the underlying tort suit. *Chesapeake Physicians Professional Assoc. v. Home Ins. Co.,* 92 Md.App. 385, 391–93, 608 A.2d 822, 825–26 (1992).

■ Insurance policies, like other contracts, are measured by their terms. *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.,* 302 Md. 383, 388, 488 A.2d 486, 488 (1985). Because "the point of the whole analysis" is to determine the parties' intent, courts must construe the instrument as a whole. *Id.* In so doing, words are accorded their ordinary and accepted meanings; the test is what meaning a reasonably prudent layperson would give to a certain term. *Id.* Courts may, of course, construe unambiguous contracts as a matter of law. *Id.* at 389, 488 A.2d at 489. Language that is merely general in nature or imprecisely defined is not necessarily ambiguous. *Pryseski,* 292 Md. at 198, 438 A.2d at 288.

■ The central issue in the present case is whether the injuries in the Underlying Tort Action "ar[ose] out of the ownership, maintenance, or use of [ABC's] premises." Guided by the unambiguous language of the contract, the Court finds they did not.

The language in the Policy and Endorsement creates what is commonly known as a "premises liability" policy. *See, e.g., Chesapeake,* 92 Md.App. at 394, 608 A.2d at 825. The Policy makes clear that the relevant premises are those in the Declarations: ABC's "offices-general" and "hardware-retail" areas at 7310 Edgewood Road. The Endorsement language specifically refers to the "ownership, maintenance or use" of these premises. The parties clearly intended this language to address the use of the physical plant at 7310 Edgewood Road. Although the word "use" is a general term and is not defined in the Policy, a reasonably prudent layperson would take this term to have its ordinary and accepted meaning, considering the context in which it is found. Here, the Endorsement lists "use" along with the terms "ownership and maintenance" referring to the premises listed in the Declarations. In this context, a prudent layperson would interpret "use ... of the premises" to mean the use of the physical structures and real estate at 7310 Edgewood Road in the usual way for that type of property. Construing the Policy as a whole, therefore, the Court concludes that its coverage extends to any injuries "arising from" the customary use of 7310 Edgewood Road as offices and hardware-retail space.

The Defendants advance a broader interpretation of the Policy, arguing that the plain language of the Endorsement "clearly includes business operations conducted on the designated premises." The Defendants also note that the Endorsement provides coverage for "personal injury" and "advertising injury," which the Policy defines to include, *inter alia,* offenses such as false arrest and copyright infringement. Because these types of injuries can occur only through the operation of a business— not the "mere existence of a business premises,"—their inclusion "demonstrates Hartford's intent that the Policy remain a premises-operations liability policy."

In spite of the logical thrust of this argument, the Court cannot adopt the De-

fendants' conclusion. The plain language of the Endorsement indicates that some business operations come under the Policy's coverage, but it does not follow that all of ABC's business operations are covered. Instead, coverage extends only to customary uses of the premises. Adopting a broader interpretation would extend coverage to nearly all aspects of ABC's business operations, for "[n]early all acts could be said to 'arise out of the use of the insured premises' in the sense that all business actions either directly originate from or are ultimately attributable to the 'head office.'" *American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F.Supp. 1287, 1289 (N.D.Cal. 1991). Because the plain language of the Policy makes clear that the parties did not intend to create comprehensive general liability coverage, the limitations in the Policy itself deserve special attention.

In particular, attention must be directed to the Policy's Declarations. The parties have thoroughly discussed *Chesapeake Physicians Professional Assoc. v. Home Ins. Co.*, 92 Md.App. 385, 608 A.2d 822 (1992), where the Court of Special Appeals interpreted a policy endorsement similar to the one in the present case. Though *Chesapeake* was decided on different grounds, this Court is guided by the *Chesapeake* court's emphasis on the Declarations language in that case. The court in *Chesapeake* found that an HMO was not covered under its insurance policy, in part, because the HMO had listed its premises merely as "Office" in the declarations. *Id.* at 395, 608 A.2d at 827. The court noted that if the insurer "had undertaken to cover all operations 'necessary or incidental' to the use of the property, it would seem logical that some more precise definition of the types of operations covered would have been included on the declarations page." *Id.*

The Court finds this reasoning persuasive and, applying it in the present case, finds that any operations covered by the Spectrum Policy must be operations associated with the customary use of the declared premises. In other words, the Poli-cy's coverage extends only to operations conducted on the premises that are customary to general office or hardware-retail premises.

The next step of our inquiry under *Pryseski* is to determine whether the injuries alleged in the Underlying Tort Action potentially fall within the coverage as defined above. If there is any scenario in which the allegations of the Celliers' complaint would result in Hartford being required to cover ABC, then the Court may not resolve the question in a declaratory judgment setting. *See Chesapeake*, 92 Md.App. at 398, 608 A.2d at 828. The Celliers have alleged negligence and misrepresentation relating to the booking of their charter boat. In particular, the Celliers claim that, but for the negligence of ABC, Mrs. Cellier would not have been aboard the boat with an incompetent captain and insufficient crew and would not have sustained severe physical injuries. The Defendants contend that these alleged injuries arose out of the use of ABC's offices and, therefore, Hartford is obliged to defend and indemnify under the Spectrum Policy.

The Court holds, however, that there is no potential coverage for the Celliers' claims. As noted, the Spectrum Policy and its Endorsement cover injuries arising from the customary use of the physical premises listed in the Declarations. Therefore, although the policy may provide some coverage for business operations related to general office or hardware-retail activities—for example, storing hardware in the "hardware" premises—the specialized business operation of chartering watercraft to be used off-site simply does not qualify as a "use ... of the premises." Consequently, the Celliers' claims do not fall under the Spectrum Policy's coverage.

Likewise, ABC's specialized boat chartering operations do not qualify as "necessary or incidental" to the declared uses of 7310 Edgewood Road. Numerous courts have addressed whether off-site injuries may be covered by such language in a

premises liability policy, and "there is a definite lack of consensus as to the correct result." *Home Ins. Co. of Manchester, New Hampshire v. Phillips*, 815 F.Supp. 1471, 1473 (S.D.Fla.1993), *aff'd*, 26 F.3d 1121 (11th Cir.1994). Some courts have decided that coverage extends to off-site injuries arising from the maintenance or use of the premises, *see, e.g., Southeast Farms, Inc. v. Auto–Owners Ins. Co.*, 714 So.2d 509 (Fla.App. 5 Dist.1998); *Sun Ins. Co. of New York v. Hamanne*, 113 N.H. 319, 306 A.2d 786 (1973), while other courts have reasoned that the language "arising out of the ... use of the insured premises, and all operations necessary or incidental thereto" cannot create general liability coverage from a premises liability policy, *see, e.g., American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F.Supp. 1287 (N.D.Cal.1991); *Phillips*, 815 F.Supp. 1471. In *Phillips*, the insurer of an aviation company sought a declaratory judgment that the premises liability policy it issued to its insured did not cover injuries caused by a plane crash off the premises. 815 F.Supp. at 1471–72. The court noted the possibility that the injuries "arose out of" use of the premises because the aviation company performed plane service and inspection on the premises and the company's negligent acts resulted in the crash. *Id.* at 1474. This interpretation, however, was unacceptable because it would extend liability to cover nearly any act, thus, eliminating the distinction between premises liability and general liability policies. *Id.*

This Court finds the reasoning in *Phillips* to be persuasive. Although one could argue, as Defendants have, that the Celliers' claims involve use of the premises because the alleged negligent acts

originated from decisions made at 7310 Edgewood Road, this Court agrees with *Phillips* that such an interpretation would undermine the parties' intent to create something less than a general liability policy. Indeed, it would strain common sense to find that off-site boat chartering is either a necessary part of general office or hardware-retail operations, or is in any way incidental to such uses. It follows that the Spectrum Policy does not provide coverage for the allegations in the Underlying Tort Action.

## B. *Affirmative Defenses* [1]

 The first affirmative defense raised by the Defendants is "bad faith." [2] Specifically, the Defendants allege that Hartford should be barred from pursuing its claim because of its "bad faith in dealing with its insured." Maryland recognizes a tort action for bad faith against an insurer in connection with settlement negotiations. *See State Farm v. White*, 248 Md. 324, 236 A.2d 269 (1967). If an insurer refuses, in bad faith, to settle a claim within the policy limits, then it may become liable for the amount of judgment obtained in excess of the policy limits. *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 393–96, 639 A.2d 652, 658–59 (1994).

 The Court holds, however, that this bad faith claim does not qualify as an affirmative defense under Federal Rule 8(c). "Affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief." *FDIC v. Haines*, 3 F.Supp.2d 155, 166 (D.Conn.1997)(quoting 2 James Wm. Moore et al., Moore's Federal Practice ¶ 8.07(1)(3d ed.1997)). The tort of bad faith by the insurer in settlement

---

1. ABC has stated that its "misrepresentation" defense would apply only if the Court finds ambiguity in the Policy language. Defs.' Opp'n to Pf.'s Mot. for Summ. J. & Cross-mot. for Summ J. at 21–22. Because the Court has found that the Policy is not ambiguous, this defense is denied.

2. In its Response to Interrogatories, ABC alleged three grounds in support of its claim:

(a) Hartford misrepresented the scope of coverage; (b) Hartford acknowledged coverage of certain claims and later attempted to deny coverage of the same claims; and (c) Hartford denied coverage only after the magistrate explained that Hartford's settlement offer was too low. Because the first two grounds are encompassed within the estoppel defense, which is discussed below, the Court will only address the settlement ground here.

negotiations accrues only when the eventual judgment obtained is in excess of the limits of the policy. *See Campbell*, 334 Md. at 396, 639 A.2d at 659. Bad faith, therefore, cannot possibly act as a bar to recovery in the current declaratory judgment action because no judgment has been reached in the Underlying Tort Action. Moreover, it is clear that the bad faith tort serves a purpose far different from an affirmative defense—it is intended as a means of restitution once the case has concluded, not as a means to hold the insurer to its contractual obligations. *See generally Mesmer v. Maryland Automobile Ins. Fund*, 353 Md. 241, 725 A.2d 1053 (1999). The Defendants, therefore, may not rely on bad faith as an affirmative defense in this action.

 The second defense raised by the Defendants is laches. They claim that because Hartford assumed the defense of ABC and participated in settlement negotiations before bringing this action, the case should be barred by the equitable defense of laches. Laches is an application of the general principles of estoppel and consists of two elements: (1) negligence or lack of diligence by the plaintiff in failing to assert its rights; and (2) prejudice or injury to the defendant resulting from the delay. *See Staley v. Staley*, 251 Md. 701, 703, 248 A.2d 655, 657 (1968). Here, the Defendants have failed to allege any damage or prejudice resulting from Hartford's delay in bringing this suit. The Court finds, therefore, that the doctrine of laches is inapplicable.

 Finally, the Defendants' third affirmative defense—estoppel—raises disputed issues of material fact that will require resolution at trial.[3] As a general rule, estoppel cannot extend insurance coverage where it does not exist. *Snyder v. Travelers Ins. Co.*, 251 F.Supp. 76, 80 (D.Md.1966); *Nationwide Mutual Ins. Co. v. Regional Electric Contractors, Inc.*, 111

Md.App. 80, 93, 680 A.2d 547, 554 (1996). One exception is where an insurance company first assumes the defense of an action with actual or presumed knowledge of facts that would have permitted it to deny coverage, then later withdraws from the defense. *See Cigarette Racing Team, Inc. v. Parliament Ins. Co.*, 395 So.2d 1238, 1239–40 (Fla.App. 4 Dist.1981)(citing cases). In such a case, the insurer may be estopped from raising the defense of non-coverage. *Id.*

 The Maryland Court of Special Appeals has predicted that the state's highest court would be willing to extend insurance coverage by estoppel in the right circumstances, to be evaluated on a case-by-case basis. *Nationwide*, 111 Md.App. at 91–93, 680 A.2d at 553–54. For estoppel to apply, the party claiming it must have: (1) been misled; (2) believed and relied on the misleading statement; and (3) changed its position for the worse. *See Neuman v. Travelers Indem. Co.*, 271 Md. 636, 654, 319 A.2d 522 (1974). The court in *Nationwide* held that the insurer was estopped from denying coverage for repairs to a switchboard that had exploded. 111 Md.App. at 94, 680 A.2d at 554. When the policyholder called his insurance agent to inquire about repairing the switchboard, the agent told him that Nationwide "would take care of it." *Id.* at 84, 680 A.2d at 549. In reliance on this statement, the insured party repaired the switchboard, only to have Nationwide deny the claim. *Id.* Although the repairs would not have been covered under the insured's policy, the court held that Nationwide was estopped from denying the claim. *Id.* at 93–94, 680 A.2d at 554.

The Court finds that the present case also presents the potential for estoppel. The Defendants claim that Hartford should be estopped from denying coverage based on its representations to ABC set

---

**3.** Because Maryland courts have made clear that waiver cannot expand a policy to cover risks not undertaken by the insurer, the Court rejects the Defendants' waiver defense. *See*

*Nationwide*, 111 Md.App. at 89–91, 680 A.2d at 551–53 (citing *Government Employees Indurance v. Group Hosp. Medical Serv. Inc.*, 322 Md. 645, 589 A.2d 464 (1991)).

forth in Hartford's January 1998 letter. On the record, Hartford appears to have had all of the necessary facts in January 1998 to know whether or not the Underlying Tort Action would be covered by the Spectrum Policy. Indeed, its later reversal came about not after learning any new facts, but after a "regular Home Office review of file coverage, and in consultation with coverage counsel." Defs.' Opp'n to Pf.'s Mot. for Summ. J. & Cross–Mot. for Summ. J. at Ex. G. It also seems clear that ABC was misled by Hartford with regard to its intent to defend and indemnify. Hartford defended ABC for nearly a year before filing the present action, and its January 1998 letter states clearly that the Spectrum Policy would cover all counts of the underlying tort claim. *Id.* at Ex. F. In addition, a reasonable juror could conclude based on the record that ABC reasonably believed Hartford's statement and relied on it.

The critical issue at trial will be whether or not ABC sustained any actual harm from its reliance on Hartford's statements. The Defendants claim that ABC changed its position for the worse because Hartford's representation: (1) exposed ABC to greater liability; (2) made it more difficult for ABC to resurrect settlement discussions; and (3) prolonged and lengthened the underlying tort suit. The Court finds that there are genuine issues of material fact that necessitate a trial, where the Defendants will have the burden of establishing all elements of the affirmative defense.

### IV. CONCLUSION

Based on the foregoing analysis, the Court finds that the Spectrum Policy does not require Hartford to defend or indemnify ABC in relation to the Underlying Tort Action, but the Defendants will have the opportunity at trial to establish an estoppel defense. Consequently, Hartford's Motion for Summary Judgment will be granted in part and denied in part. The Defendants' Motion for Summary Judgment will be denied.

*ORDER*

In accordance with the attached Memorandum, it is this 25th day of October 1999, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Summary Judgment BE, and the same IS, hereby GRANTED IN PART AND DENIED IN PART; and

2. That Defendants' Motion for Summary Judgment BE, and the same IS, hereby DENIED; and

3. That copies of this Memorandum and Order be mailed to counsel for the parties.