HARTFORD FIRE INSURANCE CO.

v.

ANNAPOLIS BAY CHARTERS,
INC., et al.

No. Civ. Y–98–4033.

United States District Court,
D. Maryland.

Oct. 23, 2000.

Hugh E. Donovan, Silver Spring, MD, for plaintiff.

Steven J. Britz, Annapolis, MD, for defendant Annapolis Bay Charters, Inc.

Kathleen A. Birrane, Baltimore, MD, for defendants Christiane G. Cellier and Claude H. Cellier.

## OPINION

YOUNG, Senior District Judge.

### I.

On October 16, 2000, the Court heard testimony in a bench trial on a single factual issue. In a related action, defendants Christiane and Claude Cellier seek damages from defendant Annapolis Bay Charters, Inc. ["ABC"], for a serious accident that Ms. Cellier suffered aboard a boat chartered by the Celliers from ABC. The plaintiff, Hartford Fire Insurance Company ["Hartford"], seeks a declaratory judgment that it is not required under the terms of a policy it issued to ABC to indemnify or defend ABC against the Celliers' claims. In a Memorandum Opinion of October 25, 1999, the Court ruled that the policy Hartford had issued to ABC does not cover the liability claim, but that Hartford might be liable under Maryland law on a theory of estoppel. Such liability by estoppel would exist only if ABC had actually relied to its detriment on misleading representations by Hartford.

### II.

Based on the testimony of Melissa Hartge Bellinger, ABC's president and the only witness at trial, and exhibits presented at trial, the Court makes certain findings of fact.

On the day of the accident, May 21, 1997, Ms. Bellinger notified her insurance agent of the accident.

On November 18, 1997, the first lawsuit related to the boating accident was filed. Ms. Bellinger's lawyer, Steven Britz, wrote the Hartford on November 25, 1997, to inform them of the case. Def.'s Ex. 15.

On November 21, 1997, Patrick Gary, a claim service specialist employed by Hartford, wrote Mr. Britz to confirm that the company was investigating the accident. Def.'s Ex. 1. On January 19, 1998, Mr. Gary wrote Mr. Britz that "we believe that there is coverage" under ABC's policy with Hartford up to the policy's limit of one million dollars. Def.'s Ex. 3. Mr. Gary reserved Hartford's rights with respect to Counts V, X, XVIII, and XXIII, which claimed intentional acts, but not with respect to any other Count. He also noted that the Celliers sought over eighteen million dollars and that the policy had a one million dollar limit. *Id.* Ms. Bellinger understood based on that letter that she was covered up to one million dollars for the accident.

From January 19, 1998, until October 16, 1998, the law firm of Anderson, Coe, & King defended ABC in the underlying tort action, and was paid by Hartford. Ms. Bellinger did not choose the firm and had had no prior connection with the firm; she had her own corporate counsel, Mr. Britz. She testified that she "could not settle" but "had to work with" the law firm.

Although Hartford paid the fees of Anderson, Coe, & King, Ms. Bellinger missed work time in cooperating with the defense of the tort case. She met with lawyers from Anderson, Coe, & King at the U.S. Courthouse, at the firm's offices, and at ABC's office. Ms. Bellinger herself was deposed. One of her employees, now deceased, testified by video, and another was available for deposition at the courthouse but no deposition was taken. Both were paid for their time by ABC. Her corporate counsel, Mr. Britz, incurred over thirty thousand dollars in fees in helping her to cooperate with the defense. She also testified that he attended depositions

and conducted questioning at the request of Anderson, Coe, & King.

At a settlement conference in or around late July 1998, Hartford offered thirty thousand dollars in settlement, which the Celliers rejected. Ms. Bellinger had no "inkling" that Hartford would refuse to cover her liability. She was working "almost daily" with Anderson, Coe, & King, on the case.

On October 16, 1998, Donna Morgan, another employee of Hartford, wrote Mr. Britz to say that "it is our opinion that while we do owe a duty to defend, we do not owe a duty to indemnify" ABC in the underlying tort suit. Def.'s Ex. 5.

On December 9, 1998, Hartford filed the instant declaratory action asking the Court to declare that Hartford was not liable to indemnify or to defend ABC.

On April 9, 1999, Ms. Bellinger signed a release stating that Hartford had paid fourteen thousand dollars, paying ABC's defense costs in full for the period November 18, 1997 through July 29, 1998. The release covers ABC's defense fees for the other consolidated actions related to the boating accident (Civ. Nos. Y–97–3895 and Y–98–91) but not the pending declaratory action (Civ. No. Y–98–4033). The release also states that "nothing contained in this 'Release' shall in any way affect the rights, obligations, and relief sought by each of the parties in the case at bar."

Ms. Bellinger testified that because of Hartford's continued defense, she had to cooperate with Anderson, Coe, & King. If she had not been covered she would have shown the Celliers her assets and "closed my doors," or at least seriously considered doing so. She relied on Anderson, Coe, & King, and simply did not want a judgment against ABC for personal reasons. However, the fees were mounting and with an adverse judgment, she believed that she would never be able to get out of debt.

With the filing of the declaratory judgment, the Court stayed the related cases. Ms. Bellinger had no input into the deci-

sion to stay the cases. She has not communicated with Anderson, Coe, & King, because the case in which they are representing her is stayed. The continuing existence of the underlying tort claims has resulted in negative publicity, general community awareness of a twenty-four million dollar lawsuit pending against her, time in defense of the declaratory action, and a negative impact on her health.

Since the Celliers initially filed suit, Ms. Bellinger testified that ABC has acquired "a few" additional assets: a four-thousand dollar sailboat, a five-thousand dollar inflatable boat with an outboard motor, and certain computers. Before the suit ABC had owned its office equipment, a twenty-two foot chase boat with a trailer, a dinghy dock, four dinghies, and a truck.

### III.

In ruling that insurance coverage might have been extended by estoppel under Maryland law, the Court considered two cases in particular, *Nationwide Mutual Insurance Company v. Regional Electric Contractors*, 111 Md.App. 80, 680 A.2d 547 (1996), and *Neuman v. Travelers Indemnity Company*, 271 Md. 636, 319 A.2d 522 (1974). In *Nationwide*, the Maryland Court of Special Appeals found that the insurance company was estopped from denying coverage. The insured had been told it was covered, and in reliance on that misrepresentation had repaired equipment that had been damaged in the accident at issue. 111 Md.App. at 84, 680 A.2d at 549. The insurance company's response had "induced [the insured] to proceed with the repairs." 111 Md.App. at 92, 680 A.2d at 553. The court emphasized that "the doctrine must be applied on a case-by-case basis," and that under the circumstances the court confronted, "permitting [the insurer] to avoid coverage 'would be contrary to equity and good conscience.'" 111 Md.App. at 93, 680 A.2d at 554.

In *Neuman*, the Maryland Court of Appeals found no evidence that the insured

parties "were misled to their injury or that they changed their position for the worse in reliance upon the representation" of the insurance company. 271 Md. at 654, 319 A.2d at 531. *Neuman* involved an initial assumption of defense, withdrawn four months later. The Court of Appeals noted the trial judge's finding of "no prejudice to the plaintiff resulting from the withdrawal of insurance counsel from the case." 271 Md. at 640, 654, 319 A.2d at 524, 531–32.

The Court finds that ABC' s situation is closer to the *Neuman* scenario than that under which *Nationwide* court found estoppel. ABC knew as soon as the Celliers' suit was filed that the policy with the Hartford would cover at most one million dollars of the more than eighteen million sought by the Celliers. The policy would thus likely have done little to satisfy an adverse judgment. ABC's additional acquisitions after the suit began were undertaken in the normal course of business, during a period in which Ms. Bellinger was well aware of her exposure to tort liability that would potentially dwarf the insurance coverage she believed she had. In contrast, in *Nationwide*, the insured party repaired equipment that had been damaged in the accident at issue, specifically in reliance on the misrepresentation that it faced no financial exposure whatsoever in doing the repairs. ABC may have believed Hartford's misrepresentations that it would be defended and indemnified, but it could not have believed that it would be fully covered if the case went to trial, and it could not have been certain that the case would settle.

The costs of defending the litigation are subject to a similar analysis. Ms. Bellinger knew the extent of her financial exposure in the Celliers' tort liability suit, knew that a large percentage of that exposure might well be borne by ABC in the event of an adverse judgment, and chose to incur defense costs. Hartford's subsequent withdrawal left ABC financially exposed to judgment, but the company was exposed to liability before Hartford withdrew. Neither equity nor good conscience bar the denial of liability under the facts of this case, and the Court finds that Hartford is not liable to ABC under a theory of estoppel.

Hartford seeks attorney fees and costs. Compl. at 5. Federal Rule of Civil Procedure 54(d)(2)(B) requires that a motion for attorney fees "specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and . . . the amount or . . . a fair estimate of the amount sought." The rule gives Hartford fourteen days from entry of judgment to submit a motion in conformity with the rule.

### ORDER

In accordance with the reasons set forth in the attached memorandum of law, it is this 23rd day of October, 2000, by the United States District Court for the District of Maryland, ORDERED, that:

1. Plaintiff Hartford has no duty to defend Annapolis Bay Charters, Inc., in the Cellier lawsuit (Civ. No. Y–97–3895);

2. Plaintiff Hartford has no duty to indemnify Annapolis Bay Charters, Inc., for any judgment or settlement arising out of the Cellier lawsuit (Civ. No. Y–97–3895); and

3. Final judgment BE, and such judgment hereby IS, ENTERED in favor of Plaintiff Hartford.